UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

LUTHERAN MEDICAL CENTER,

                     Plaintiff,

     vs.

KATHLEEN SEBELIUS, in her official capacity as
Secretary of the United States Department of Health
and Human Services,

                  Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**COMPLAINT**

Civil Action No. _____

CV 13 - 7325

Plaintiff Lutheran Medical Center (the "Hospital" or "Plaintiff"), by its attorneys,

Garfunkel Wild, P.C., for its Complaint against the Defendant, Kathleen Sebelius, in her official

capacity as Secretary of the United States Department of Health and Human Services (the

"Secretary"), alleges as follows:

## The Parties

    1.     The Hospital is a not-for-profit hospital in Brooklyn, New York, licensed to

provide inpatient hospital services under Article 28 of the New York Public Health Law.

    2.     The Hospital has participated in the Medicare program since January 1, 1966, and

has been subject to the Medicare Prospective Payment System since the fiscal year beginning

January 1, 1986 and ending December 31, 1986.

    3.     Defendant Kathleen Sebelius is currently the Secretary of the United States

Department of Health and Human Services.  She is the federal officer legally responsible for

administering the Medicare Program.

2725114v.2

## Jurisdiction and Venue

4.      This lawsuit arises under Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395ccc (the "Medicare Act"), and seeks direct judicial review under 42 U.S.C. § 1395oo of the Secretary's October 28, 2013 decision dismissing the Hospital's appeal of the Intermediary's final determinations regarding the Hospital's Medicare reimbursement for its fiscal year ending December 31, 2004.

5.      Jurisdiction is therefore proper in this Court pursuant to 42 U.S.C. §§ 1395ii and 1395oo(f).

6.      Because the Hospital's principal place of business is located in Kings County, New York, venue is proper in this Court under 42 U.S.C. § 1395oo and 28 U.S.C. § 1391.

## Summary of Relevant Facts

7.      The Hospital is a general short term acute care hospital.  As a large hospital located in the Sunset Park section of Brooklyn in New York City, the Hospital serves a large number of poor and elderly patients.

8.      During the cost reporting period ending December 31, 2004, the Hospital was licensed for a total of 476 acute beds.

9.      On or about August 21, 2006, the Hospital filed an Institutional Cost Report for the fiscal year beginning January 1, 2004 and ending December 31, 2004.

10.     On July 28, 2008, the Hospital's Medicare Fiscal Intermediary, National Government Services, Inc. (the "Intermediary"), issued its final settlement and Notice of Program Reimbursement ("NPR") for the Hospital's 2004 fiscal year.  Among other issues, in

2

the NPR, the Intermediary failed to include certain Medicaid eligible and paid days in the Hospital's Disproportionate Share ("DSH") calculation, due in part to a New York State Department of Health programming error, which inappropriately eliminated these days from the original submission. Based upon the Hospital's internal analysis, thousands of days were improperly excluded. Restoration of these days would result in significant additional reimbursement to the Hospital, estimated at $475,000.

11.     The Intermediary also improperly disallowed the Hospital's Federally qualified health clinics ("FQHC"), upon information and belief due to a clerical error, because the clinics' provider number was not in the Intermediary's database. The Intermediary has allowed these clinics for all relevant years prior to 2004, and again in 2005. Upon information and belief, the data was lost when the Intermediary was transferring its database from one office to another, causing the clinics to be disallowed in FY 2004. The Intermediary then disallowed the Hospital's FQHC Medicare bad debts, at an estimated impact to the Hospital of $11,868.

12.     On January 23, 2009, the Hospital filed a timely appeal of the Intermediary's determinations to the Provider Reimbursement Review Board ("PRRB") in accordance with 42 U.S.C. § 1395oo. (Exhibit A.)

13.     On August 28, 2009, the Hospital served a Preliminary Position Paper on the Intermediary, in accordance with the PRRB's rules. (Exhibit B, attached without voluminous exhibits.)

14.     The hearing for the appeal was scheduled for January 10, 2014. (Exhibit C.)

3

15.     The PRRB requested that the Hospital file a Final Position Paper by October 1, 2013. *Id.*

16.     In the fall of 2013, the Hospital began communicating actively with the Intermediary to attempt to settle this appeal, along with four other pending PRRB appeals that the Hospital had filed, for FYs 2000, 2001, 2002 and 2003, all of which were scheduled for a hearing on January 10, 2014.

17.     The Hospital was also preparing responses to jurisdictional challenges filed by the Intermediary for the appeals for FYs 2001 and 2002.

18.     With focus directed towards issue resolution, the Hospital inadvertently missed the deadline for the Final Position Paper for FY 2004, as well as the identical deadline for the Final Position Paper for FY 2003.

19.     On October 28, 2013, the PRRB dismissed the Hospital's appeal for FY 2004, as well as its appeal for FY 2003, for failing to file a Final Position Paper by October 1, 2013. (Exhibit D.)

20.     Upon learning that the deadline had been missed, on October 31, 2013, the Hospital immediately submitted a Final Position Paper to the Board and the Intermediary. (Exhibit E, attached without voluminous exhibits.)

21.     This Final Position Paper was substantively identical to the Preliminary Position Paper served on the Intermediary on August 28, 2009.

4

22.     Because the evidence and arguments in both Position Papers were identical, the Intermediary was in no way prejudiced by the short delay in receiving the Final Position Paper.

23.     In addition, given the Hospital and Intermediary's ongoing settlement discussions, the Intermediary was clearly aware of and versed in the issues in dispute in the appeal.

24.     On November 4, 2013, the Provider respectfully requested that the PRRB reconsider its decision in light of the harmless and inadvertent delay, which in no way prejudiced the Intermediary.  (Exhibit F.)

25.     On December 6, 2013, the PRRB issued a decision upholding its initial determination.  (Exhibit G.)

**Cause of Action**

26.     Plaintiff repeats and realleges each and every allegation set forth above as if more fully set forth herein.

27.     The Provider Reimbursement Review Board's decision, annexed as Exhibit D, was improper, arbitrary, capricious, and otherwise contrary to law, including relevant provisions of the Medicare Act, Medicare Regulations, and the Administrative Procedure Act.

5

WHEREFORE, Plaintiff demands judgment in its favor against Defendant (a) reversing the Provider Reimbursement Review Board's decision, annexed as Exhibit D, and remanding the matter to the Secretary for further proceedings; (b) ordering Defendant to pay Plaintiff's attorneys' fees, costs, and expenses pursuant to 5 U.S.C. § 504; and (c) granting Plaintiff such other and further relief as this Court may deem just and proper.

Dated: Great Neck, New York
      December 23, 2013

                GARFUNKEL WILD, P.C.
                *Attorneys for Plaintiff*

                By: _____
                     Roy W. Breitenbach (Bar Roll No. RB 2680)
                     Courtney A. Rogers (Bar Roll No. CR 6448)

                111 Great Neck Road
                Great Neck, New York  11021
                (516) 393-2200

**DEPARTMENT OF HEALTH & HUMAN SERVICES**
**PROVIDER REIMBURSEMENT REVIEW BOARD**
2520 Lord Baltimore Drive, Suite L
Baltimore, MD 21244-2670
Phone: 410-786-2671

**FORM A – INDIVIDUAL APPEAL REQUEST**

**Date of Request:**   January 23, 2009

**Does this Request for Hearing include a request for Expedited Judicial Review?**
_____ YES  _X_ NO (Note: A Request for EJR must be submitted in a separate document and "EJR Request" must be marked on the outside of the envelope or package transmitting this appeal.)

**Does this Request for Hearing include a request for Mediation?**
_____ YES  _X_ NO

**Date of Final Determination:**     July 28, 2008

**Type of Final Determination:**     _X_   Notice of Program Reimbursement (NPR)
(Check One)                          _____  Revised NPR
                                     _____  Exception Determination
                                     _____  Federal Register Notice
                                     _____  *Failure to Issue a Timely Determination
                                     _____  Other (specify: _____ )

NOTICE OF PROGRAM REIMBURSEMENT ATTACHED AT **TAB 1**.

**If receipt of Final Determination is more than five days after date of determination, state date received:** _____ (Attach evidence of date of receipt.)

**\*If claiming Intermediary failed to issue a timely Final Determination, state date cost report was sent to intermediary:** _____
(a copy of the cost report certification page and nay other evidence to support the date the cost report was filed.)

**FYE** (1 per appeal request)   12/31/2004

**Provider information**

**Provider No.:**   33-0306
**Provider Name:**   Lutheran Medical Center
**Provider Contact/Title:**   Rick Langfelder, Executive Vice President, Finance
**Provider Address:**   150 55th Street
                        Brooklyn, NY 11220

**Provider's Telephone No.:**   (718) 630-6338

**Provider's Fax No.:**    (718) 745-6338
**Provider Contact's Email address:**    rlangfelder@lmcmc.com

**Is this Provider commonly owned or controlled?** ____ YES __X__ NO
   If YES, identify the name of the corporation, name of the contact person at the
   corporation, the address and telephone number:

## Intermediary Information

**Intermediary Name:** National Government Services
   **Address:** 2651 Strang Boulevard
   Yorktown Heights, NY 10598-2996

**Intermediary Code:** 00308
(From NPR, if known)

## Representative Information (if applicable)

**Representative's Name:**  Roy W. Breitenbach
**Company Name and Address:**  Garfunkel, Wild & Travis, P.C.
   111 Great Neck Road
   Great Neck, NY 11021
**Phone Number:**  (516) 393-2200
**Representative's Fax No.:**  (516) 466-5964
**E-mail address:**  rbreitenbach@gwtlaw.com

LETTER FROM THE PROVIDER AUTHORIZING REPRESENTATION ATTACHED AT **TAB 2**.

## Issue(s) Appealed

A STATEMENT OF THE ISSUES IS ATTACHED AT **TAB 3**.  The statement of the issue includes:

   | x | a brief description of the issue |
   | x | the audit adjustment number(s) |
   | x | the amount in controversy; and |
   | x | a statement identifying the legal basis for the appeal. |

**Total Amount in Controversy for all issues:**    $1,786,573
(Amount Medicare payment would increase if appeal of all issues is successful)

1116968v.1

## CERTIFICATIONS:

A.   I hereby certify that none of the issues filed in this appeal are pending in any other appeal for the same period, nor have they been adjudicated, withdrawn or dismissed from any other PRRB appeal.

Printed Name:   Roy W. Breitenbach
Title:   Member, Garfunkel, Wild & Travis, P.C.

Signature:
Provider Owner/Officer or Designated Representative

Date:   January 23, 2009

B.   I hereby certify to the best of my knowledge that there is no other provider to which this Provider is related by common ownership or control that has a pending request for a Board hearing on any of the same issues contained in this hearing request for cost reporting periods that end in the same calendar year covered in this hearing request.  (See 42 C.F.R. § 405.1837(b)(1)(i).

Signature:
Provider Owner/Officer or Designated Representative

Date:   January 23, 2009

C.   Certificate of Service: I certify that a copy of this Request (and all supporting documentation) was sent by (**Check one**)

_____   United States Postal Service

___x___   Nationally recognized courier. Specify Name:   FedEx_____

to the Intermediary on this 23 day of January, 2009

Certified Mail or Tracking Number   9740 2686 9619_____

Signature:
Provider Owner/Officer or Designated Representative

Date:   January 23, 2009

1116968v.1

1


**National Government Services.**

National Government Services, Inc.
PO Box 4846
Syracuse, New York 13221-4846
*A CMS Contracted Agent*

# Medicare

Mr. Richard Langfelder
Chief Financial Officer
Lutheran Medical Center
150 55 Street
Brooklyn, New York 11220

**JUL 2 8 2008**

Re:    Notice of Program Reimbursement
       33-0306, 33-S306, 33-T306
       Fiscal Intermediary #00308

Dear Mr. Langfelder:

On June 01, 2005, we received your cost report for the fiscal year ending December 31, 2004. We have reviewed this report, and the results of our review have been incorporated in this Notice of Amount of Program Reimbursement (NPR). Based on this review, we find that Lutheran Medical Center has been underpaid $908,833.00 for the fiscal year December 31, 2004, as summarized below.

| Provider # | Part A | Part B | Total |
|---|---|---|---|
| 330306 | $250,987.00 | $482,746.00 | $733,733.00 |
| 33S306 | $24,465.00 | $0.00 | $24,465.00 |
| 33T306 | $143,894.00 | $0.00 | $143,894.00 |
| **Provider Totals** | **$419,346.00** | **$482,746.00** | **$902,092.00** |

Therefore, we have calculated a payment due your institution in the amount of $902,092.00. The total amount will be included in a remittance advice within the next 30 days.

If you have any additional questions, please do not hesitate to call Suzanne Knox at (315) 4077.

Sincerely,

Sandra J. O'Conner, Manager
Audit & Reimbursement

Enclosures


**CMS**
*CENTERS for MEDICARE & MEDICAID SERVICES*
07/08/08

DEC-16-2008 01:51PM FROM- T-886 P.002 F-471

HEALTH FINANCIAL SYSTEMS    MCRS/PC-WIN    FOR LUTHERAN MEDICAL CENTER

| | | | | IN LIEU OF FORM CMS-2552-96 (11/1995) |
|---|---|---|---|---|
| | | | PROVIDER NO: | PERIOD: | PREPARED 7/25/2008 |
| | | | 33-0306 | FROM 1/ 1/2004 | WORKSHEET E-1 |
| | | | COMPONENT NO: | TO  12/31/2004 | |
| | | | 33-0306 | | |

ANALYSIS OF PAYMENTS TO PROVIDERS FOR SERVICES RENDERED

TITLE XVIII                HOSPITAL

| DESCRIPTION | INPATIENT-PART A | | P A R T  B | |
|---|---|---|---|---|
| | MM/DD/YYYY | AMOUNT | MM/DD/YYYY | AMOUNT |
| | 1 | 2 | 3 | 4 |
| 1 TOTAL INTERIM PAYMENTS PAID TO PROVIDER | | 78,506,509 | | 9,391,827 |
| 2 INTERIM PAYMENTS PAYABLE ON INDIVIDUAL BILLS, EITHER SUBMITTED OR TO BE SUBMITTED TO THE INTERMEDIARY, FOR SERVICES RENDERED IN THE COST REPORTING PERIOD. IF NONE, WRITE "NONE" OR ENTER A ZERO. | | NONE | | NONE |
| 3 LIST SEPARATELY EACH RETROACTIVE LUMP SUM ADJUSTMENT AMOUNT BASED ON SUBSEQUENT REVISION OF THE INTERIM RATE FOR THE COST REPORTING PERIOD.  ALSO SHOW DATE OF EACH PAYMENT.  IF NONE, WRITE "NONE" OR ENTER A ZERO. (1) | | | | |
| ADJUSTMENTS TO PROVIDER   .01 | | | | |
| ADJUSTMENTS TO PROVIDER   .02 | | | | |
| ADJUSTMENTS TO PROVIDER   .03 | | | | |
| ADJUSTMENTS TO PROVIDER   .04 | | | | |
| ADJUSTMENTS TO PROVIDER   .05 | | | | |
| ADJUSTMENTS TO PROGRAM    .50 | | | | |
| ADJUSTMENTS TO PROGRAM    .51 | | | | |
| ADJUSTMENTS TO PROGRAM    .52 | | | | |
| ADJUSTMENTS TO PROGRAM    .53 | | | | |
| ADJUSTMENTS TO PROGRAM    .54 | | | | |
| ADJUSTMENTS TO PROGRAM    .99 | | | | |
| SUBTOTAL | | NONE | | NONE |
| 4 TOTAL INTERIM PAYMENTS | | 78,506,509 | | 9,391,827 |
| TO BE COMPLETED BY INTERMEDIARY | | | | |
| 5 LIST SEPARATELY EACH TENTATIVE SETTLEMENT PAYMENT AFTER DESK REVIEW.  ALSO SHOW DATE OF EACH PAYMENT. IF NONE, WRITE "NONE" OR ENTER A ZERO. (1) | | | | |
| TENTATIVE TO PROVIDER   .01 | 8/ 1/2005 | 640,859 | 8/ 1/2005 | 72,760 |
| TENTATIVE TO PROVIDER   .02 | | | | |
| TENTATIVE TO PROVIDER   .03 | | | | |
| TENTATIVE TO PROGRAM    .50 | | | | |
| TENTATIVE TO PROGRAM    .51 | | | | |
| TENTATIVE TO PROGRAM    .52 | | | | |
| SUBTOTAL                .99 | | 640,859 | | 72,760 |
| 6 DETERMINED NET SETTLEMENT   SETTLEMENT TO PROVIDER  .01 | | 250,987 | | 482,746 |
| AMOUNT (BALANCE DUE)    SETTLEMENT TO PROGRAM   .02 | | | | |
| BASED ON COST REPORT (1) | | | | |
| 7 TOTAL MEDICARE PROGRAM LIABILITY | | 79,398,355 | | 9,947,333 |

NAME OF INTERMEDIARY: National Government Services
INTERMEDIARY NO:  00308

SIGNATURE OF AUTHORIZED PERSON: _Heather Lupini_

DATE: JUL 28 2008

(1) ON LINES 3, 5 AND 6, WHERE AN AMOUNT IS DUE PROVIDER TO PROGRAM, SHOW THE AMOUNT AND DATE ON WHICH THE PROVIDER AGREES TO THE AMOUNT OF REPAYMENT, EVEN THOUGH TOTAL REPAYMENT IS NOT ACCOMPLISHED UNTIL A LATER DATE.

2552-96 v1701.100
07/25/2008 06:37:34 File: C:\HFSWIN\D4330306.MCA
Settled Without Audit - Desk Reviewed

Case 1:13-cv-07325-FB-JMA Document 1 Filed 12/26/13 Page 13 of 75 PageID #: 713

HEALTH FINANCIAL SYSTEMS    MCRS/PC-WIN    FOR LUTHERAN MEDICAL CENTER

ANALYSIS OF PAYMENTS TO PROVIDERS FOR SERVICES RENDERED

| | | |
|---|---|---|
| PROVIDER NO: | PERIOD: | PREPARED 7/25/2008 |
| 33-0306 | FROM 1/ 1/2004 | WORKSHEET E-1 |
| COMPONENT NO: | TO 12/31/2004 | |
| 33-S306 | | |

TITLE XVIII          SUBPROVIDER 1

| | | INPATIENT—PART A | | P A R T  B | |
|---|---|---|---|---|---|
| | DESCRIPTION | MM/DD/YYYY 1 | AMOUNT 2 | MM/DD/YYYY 3 | AMOUNT 4 |
| 1 | TOTAL INTERIM PAYMENTS PAID TO PROVIDER | | 1,781,298 | | 1,945 |
| 2 | INTERIM PAYMENTS PAYABLE ON INDIVIDUAL BILLS, EITHER SUBMITTED OR TO BE SUBMITTED TO THE INTERMEDIARY, FOR SERVICES RENDERED IN THE COST REPORTING PERIOD. IF NONE, WRITE "NONE" OR ENTER A ZERO. | | NONE | | NONE |
| 3 | LIST SEPARATELY EACH RETROACTIVE LUMP SUM ADJUSTMENT AMOUNT BASED ON SUBSEQUENT REVISION OF THE INTERIM RATE FOR THE COST REPORTING PERIOD.  ALSO SHOW DATE OF EACH PAYMENT.  IF NONE, WRITE "NONE" OR ENTER A ZERO. (1) | | | | |
| | ADJUSTMENTS TO PROVIDER       .01 | 8/18/2004 | 122,825 | | |
| | ADJUSTMENTS TO PROVIDER       .02 | 10/15/2004 | 29,465 | | |
| | ADJUSTMENTS TO PROVIDER       .03 | | | | |
| | ADJUSTMENTS TO PROVIDER       .04 | | | | |
| | ADJUSTMENTS TO PROVIDER       .05 | | | | |
| | ADJUSTMENTS TO PROGRAM        .50 | | | | |
| | ADJUSTMENTS TO PROGRAM        .51 | | | | |
| | ADJUSTMENTS TO PROGRAM        .52 | | | | |
| | ADJUSTMENTS TO PROGRAM        .53 | | | | |
| | ADJUSTMENTS TO PROGRAM        .54 | | | | NONE |
| | SUBTOTAL                      .99 | | 152,290 | | 1,945 |
| 4 | TOTAL INTERIM PAYMENTS | | 1,933,588 | | |
| 5 | TO BE COMPLETED BY INTERMEDIARY | | | | |
| | LIST SEPARATELY EACH TENTATIVE SETTLEMENT PAYMENT AFTER DESK REVIEW.  ALSO SHOW DATE OF EACH PAYMENT. IF NONE, WRITE "NONE" OR ENTER A ZERO. (1) | | | | |
| | TENTATIVE TO PROVIDER         .01 | | | | |
| | TENTATIVE TO PROVIDER         .02 | | | | |
| | TENTATIVE TO PROVIDER         .03 | | | | |
| | TENTATIVE TO PROGRAM          .50 | 8/ 1/2005 | 229,086 | | |
| | TENTATIVE TO PROGRAM          .51 | | | | |
| | TENTATIVE TO PROGRAM          .52 | | | | |
| | SUBTOTAL                      .99 | | -229,086 | | NONE |
| 6 | DETERMINED NET SETTLEMENT    SETTLEMENT TO PROVIDER    .01 | | 24,465 | | |
| | AMOUNT (BALANCE DUE)         SETTLEMENT TO PROGRAM     .02 | | | | |
| 7 | TOTAL MEDICARE PROGRAM LIABILITY    BASED ON COST REPORT (1) | | 1,728,967 | | 1,945 |

NAME OF INTERMEDIARY: National Government Services
INTERMEDIARY NO:  00308

SIGNATURE OF AUTHORIZED PERSON: _Wazner Lupine_

DATE: JUL 2 8 2008

(1) ON LINES 3, 5 AND 6, WHERE AN AMOUNT IS DUE PROVIDER TO PROGRAM, SHOW THE AMOUNT AND DATE ON WHICH THE PROVIDER
    AGREES TO THE AMOUNT OF REPAYMENT, EVEN THOUGH TOTAL REPAYMENT IS NOT ACCOMPLISHED UNTIL A LATER DATE.

DEC-16-2008 01:52PM   FROM-

HEALTH FINANCIAL SYSTEMS    MCRS/PC-WIN    FOR LUTHERAN MEDICAL CENTER

ANALYSIS OF PAYMENTS TO PROVIDERS FOR SERVICES RENDERED

```
                                                       IN LIEU OF FORM CMS-2552-96 (11/1998)
                                            I  PROVIDER NO:    I  PERIOD:              I  PREPARED 7/25/2008
                                            I  33-0306        I  FROM  1/ 1/2004      I  WORKSHEET E-1
                                            I                 I                       I
                                            I  COMPONENT NO:  I  TO   12/31/2004      I
                                            I  33-T306        I                       I
```

                    TITLE XVIII              SUBPROVIDER 2

                                 DESCRIPTION

| | INPATIENT-PART A | | PART B | |
|---|---|---|---|---|
| | MM/DD/YYYY<br>1 | AMOUNT<br>2 | MM/DD/YYYY<br>3 | AMOUNT<br>4 |
| 1 TOTAL INTERIM PAYMENTS PAID TO PROVIDER | | 5,880,950 | | 5,594 |
| 2 INTERIM PAYMENTS PAYABLE ON INDIVIDUAL BILLS,<br>EITHER SUBMITTED OR TO BE SUBMITTED TO THE<br>INTERMEDIARY. FOR SERVICES RENDERED IN THE COST<br>REPORTING PERIOD. IF NONE, WRITE "NONE" OR<br>ENTER A ZERO. | | NONE | | NONE |

3 LIST SEPARATELY EACH RETROACTIVE LUMP SUM ADJUSTMENT
  AMOUNT BASED ON SUBSEQUENT REVISION OF THE INTERIM
  RATE FOR THE COST REPORTING PERIOD.  ALSO SHOW DATE
  OF EACH PAYMENT. IF NONE, WRITE "NONE" OR ENTER A
  ZERO.  (1)

| | | | | |
|---|---|---|---|---|
| ADJUSTMENTS TO PROVIDER | .01 | | | |
| ADJUSTMENTS TO PROVIDER | .02 | | | |
| ADJUSTMENTS TO PROVIDER | .03 | | | |
| ADJUSTMENTS TO PROVIDER | .04 | | | |
| ADJUSTMENTS TO PROVIDER | .05 | | | |
| ADJUSTMENTS TO PROGRAM | .50 | | | |
| ADJUSTMENTS TO PROGRAM | .51 | | | |
| ADJUSTMENTS TO PROGRAM | .52 | | | |
| ADJUSTMENTS TO PROGRAM | .53 | | | |
| ADJUSTMENTS TO PROGRAM | .54 | | | NONE |
| ADJUSTMENTS TO PROGRAM | .99 | NONE | | |
| SUBTOTAL | | | | |
| 4 TOTAL INTERIM PAYMENTS | | 5,880,950 | | 5,594 |

    TO BE COMPLETED BY INTERMEDIARY
5 LIST SEPARATELY EACH TENTATIVE SETTLEMENT PAYMENT
  AFTER DESK REVIEW.  ALSO SHOW DATE OF EACH PAYMENT.
  IF NONE, WRITE "NONE" OR ENTER A ZERO. (1)

| | | | | |
|---|---|---|---|---|
| TENTATIVE TO PROVIDER | .01 | 8/ 1/2005 | 162,461 | |
| TENTATIVE TO PROVIDER | .02 | | | |
| TENTATIVE TO PROVIDER | .03 | | | |
| TENTATIVE TO PROGRAM | .50 | | | |
| TENTATIVE TO PROGRAM | .51 | | | |
| TENTATIVE TO PROGRAM | .52 | | | NONE |
| SUBTOTAL | .99 | | 162,461 | |
| 6 DETERMINED NET SETTLEMENT   SETTLEMENT TO PROVIDER | .01 | | 143,894 | |
|   AMOUNT (BALANCE DUE)        SETTLEMENT TO PROGRAM | .02 | | | |
|   BASED ON COST REPORT (1) | | | | |
| 7 TOTAL MEDICARE PROGRAM LIABILITY | | | 6,187,305 | 5,594 |

NAME OF INTERMEDIARY: National Government Services
INTERMEDIARY NO: 00308

SIGNATURE OF AUTHORIZED PERSON: *Nenthis Lupini*

DATE: JUL 2 8 2008

(1) ON LINES 3, 5 AND 6, WHERE AN AMOUNT IS DUE PROVIDER TO PROGRAM, SHOW THE AMOUNT AND DATE ON WHICH THE PROVIDER
    AGREES TO THE AMOUNT OF REPAYMENT, EVEN THOUGH TOTAL REPAYMENT IS NOT ACCOMPLISHED UNTIL A LATER DATE.

2552-96 v1701.100
07/25/2008 06:37:34 File:  C:\HFSWIN\D4330306.MCA
Settled Without Audit - Desk Reviewed



**National Government Services.**

*A CMS Contracted Agent*

National Government Services, Inc.
www.NGSMedicare.com

**Medicare**

Exhibit 03

July 23, 2008

| | |
|---|---|
| Provider Name: | Lutheran Medical Center |
| Provider Number: | 33-0306 |
| Reporting Period: | 01/01/2004 to 12/31/2004 |

We have reviewed the provider(s) Medicare cost report for the cost reporting period stated above.

Preparation of the cost report and compliance with Medicare laws, regulations, and instructions are the responsibility of the provider(s) management.

We have performed a review of the cost report. The attached Medicare cost report has been adjusted, where required, for items of noncompliance discovered during our review, which are listed in the attached adjustment report.

This report is intended for the information of the provider and the Centers for Medicare & Medicaid Services. This restriction is not intended to limit distribution of this report, which is a matter of public record, unless otherwise restricted by applicable laws.

*Sandra O'Connor* by HR
_____
Manager – Audit & Reimbursement

**JUL 2 8 2008**
_____
Notice of Program Reimbursement Date

DRA-317 – Cost Report Settlement,
Exh 03 - Desk Reviewed Form of
Report Letter

Page 1 of 1

17041
02/28/08



**CMS**
CENTERS for MEDICARE & MEDICAID SERVICES


**National Government Services.**

National Government Services, Inc.
400 South Salina Street
Syracuse, New York 13202
*A CMS Contracted Agent*

# Medicare

888-855-4356

CERTIFIED MAIL

July 23, 2008

Mr. Richard Langfelder
Chief Financial Officer
Lutheran Medical Center
150 55th Street
Brooklyn, NY 11220

Re: Desk Review Adjustment Report

Provider Name:        Lutheran Medical Center
Provider Number:     33-0306
Fiscal Period Ending: 12/31/2004

Dear Mr. Langfelder:

Enclosed is a copy of our Final Desk Review Adjustment Report for the provider referenced above.

Please review the attached Final Desk Review Adjustment report as several of the adjustments have been revised since our initial report dated 06/26/2008. Note that the initial adjustments # 44 and 45 have been revised as a result of documentation received from your office. Please note that these adjustments are now considered final.

If you have any questions or concerns, please contact Robert Ruehle, Auditor Senior at (518) 367-5450 immediately.

Sincerely,

*Sandra O'Connor  by AR*

Sandra J. O'Connor
Manager
Provider Audit and Reimbursement

Attachments
cc: Robert Ruehle, Auditor Senior, NGS

**CMS/**
CENTERS for MEDICARE & MEDICAID SERVICES

MC13675 Rev. 03/16/2007

Desk Review: _____ ✕ _____   Focused Review: _____   Audit: _____          Reopening: _____

Intermediary: National Government Services

I have reviewed the following audit adjustments # 1 through # 69. facility's revised Statement of Reimbursable Cost
I understand that these adjustments will be incorporated into our
for the period ended 12/31/2004. I take exception to the following adjustments:

_____

_____

_____

Provider #  33-0306          Provider Name: LUTHERAN MEDICAL CENTER

Officer: _____
            (Signature)

                                                                                   Date: _____

Title: _____

```
DATA FILE :
FISCAL PERIOD: 01/01/2004 TO 12/31/2004                                    HEALTH FINANCIAL SYSTEMS
PROVIDER NAME: LUTHERAN MEDICAL CENTER                                           MCRS/PC-WIN
PROVIDER NO. : 33-0306
--------------------------------------------------------------------------------------------------
   COLUMN DESCRIPTION                      PREVIOUS VALUE    DIFFERENCE        NEW VALUE      ACTION
--------------------------------------------------------------------------------------------------
**** ADJUSTMENT NO.   1 **** REF:   1 **** WPR: CJ-3
This provider does not have a certified FQHC unit therefore, the information for subprovider #331845 has been removed from
worksheet S-2 Line 14.10.
Ref: 42 CFR 424.510; CMS Pub. 15-II, Section 3604

   S-2, LINE 14.10 HOSPITAL-BASED FQHC                                                 0          M
      1.00 COMPONENT NAME            N/A FOR MEMO ADJUSTMENT

      2.00 PROVIDER NUMBER           N/A FOR MEMO ADJUSTMENT                            0          M

      3.00 DATE CERTIFIED            N/A FOR MEMO ADJUSTMENT                            0          M


**** ADJUSTMENT NO.   2 **** REF:  14
S-2, Column 4.00, - PS&R, PS&R Run Date: 02/06/2008
Payment End Date: 02/29/2008
Ref: 42CFR 412.110/413.20
CMS PUB. 15-1 Sec. 2408.4

   S-2, LINE 56.00 IF COL 1 IS Y, ENTER Y OR N IN COL 3
      4.00 FEES                           628,001         327,507            955,508          R


**** ADJUSTMENT NO.   3 **** REF:  33 **** WPR: CB-3
To adjust the ambulance limit per the Intermediary's data.
Ref: 42 CFR 414.610 and 414.615; CMS Pub. 15-1, Section 2104.1; CMS Pub. 15-II, Section 3604.

   S-2, LINE 56.00 IF COL 1 IS Y, ENTER Y OR N IN COL 3
      2.00 LIMIT                           166.76          25.33              192.09          R


**** ADJUSTMENT NO.   4 **** REF:  43 **** WPR: CJ-2
The payment system for the rehab unit has properly been changed  from 'T' to 'P' on Worksheet S-2 Line 3.01.
Ref: 42 CFR 412.29; CMS Pub. 15-II, Section 3604

   S-2, LINE 0.00
      0.00 NOT FOUND                  N/A FOR MEMO ADJUSTMENT                           0          M


**** ADJUSTMENT NO.   5 **** REF:  59 **** WPR: CJ-7
THE RESPONSES TO W/S S-2 LINES 21.04 AND 21.05 HAVE BEEN CHANGED TO '1' FOR "URBAN".

   S-2, LINE 21.04 FOR STANDARD GEOGRAPHICAL CLASSIFICA                                            M
   »   1.00 URBAN/RURAL              N/A FOR MEMO ADJUSTMENT


**** ADJUSTMENT NO.   6 **** REF:   6
S-3, Part I, Column 13.00, - PS&R, PS&R Run Date: 02/06/2008
Payment End Date: 02/29/2008
Ref: 42CFR 412.110/413.20
CMS PUB. 15-1 Sec. 2408.4

   S-3, PART 1, LINE 1.00 ADULTS & PEDIATRICS
      13.00 DISCHARGES TITLE XVIII         4,672            -37               4,635          R


**** ADJUSTMENT NO.   7 **** REF:  16
S-3, Part I, Column 4.00, - PS&R, PS&R Run Date: 02/06/2008
Payment End Date: 02/29/2008
Ref: 42CFR 412.110/413.20
CMS PUB. 15-1 Sec. 2408.4

   S-3, PART 1, LINE 2.00 HMO
      4.00 I/P DAYS O/P VISITS/TRIPS TITLE   9,235          108               9,343          A
         ALSO SEE REF.# 25

   S-3, PART 1, LINE 14.00 SUBPROVIDER I
      4.00 I/P DAYS O/P VISITS/TRIPS TITLE   2,490         -139               2,351          R


**** ADJUSTMENT NO.   8 **** REF:  17
S-3, Part I, Column 13.00, - PS&R, PS&R Run Date: 02/06/2008
Payment End Date: 02/29/2008
Ref: 42CFR 412.110/413.20
CMS PUB. 15-1 Sec. 2408.4

   S-3, PART 1, LINE 14.00 SUBPROVIDER I
      13.00 DISCHARGES TITLE XVIII           139             8                 147          R


**** ADJUSTMENT NO.   9 **** REF:  25
S-3, Part I, Column 4.00, - PS&R, PS&R Run Date: 02/06/2008
Payment End Date: 02/29/2008
Ref: 42CFR 412.110/413.20
CMS PUB. 15-1 Sec. 2408.4

   S-3, PART 1, LINE 2.00 HMO
      4.00 I/P DAYS O/P VISITS/TRIPS TITLE   9,343           61               9,404          A
         ALSO SEE REF.# 16

   S-3, PART 1, LINE 14.01 SUBPROVIDER II - REHAB
      4.00 I/P DAYS O/P VISITS/TRIPS TITLE   4,268           -6               4,262          R
```

DEC-16-2008 01:53PM FROM

HEALTH FINANCIAL SYSTEMS
MCRS/PC-WIN

```
DATA FILE   : C:\MPSWIN\0433U300.REA
FISCAL PERIOD: 01/01/2004 TO 12/31/2004
PROVIDER NAME: LUTHERAN MEDICAL CENTER
PROVIDER NO. : 33-0306
```

| COLUMN DESCRIPTION | PREVIOUS VALUE | DIFFERENCE | NEW VALUE | ACTION |
|---|---|---|---|---|

**** ADJUSTMENT NO.  10 **** REF:  26
S-3, Part I, Column 13.00, - PS&R, PS&R Run Date: 02/06/2008
Payment End Date: 02/29/2008
Ref: 42CFR 412.110/413.20
CMS PUB. 15-1 Sec. 2408.4

| | | | | |
|---|---|---|---|---|
| S-3, PART 1, LINE 14.01 SUBPROVIDER II - REHAB<br>  13.00 DISCHARGES TITLE XVIII | 313 | -1 | 312 | R |

**** ADJUSTMENT NO.  11 **** REF:  5
S-3, Part I, Column 4.00, - PS&R, PS&R Run Date: 02/06/2008
Payment End Date: 02/29/2008
Ref: 42CFR 412.110/413.20
CMS PUB. 15-1 Sec. 2408.4

| | | | | |
|---|---|---|---|---|
| S-3, PART 1, HOSPITAL, LINE 1.00 ADULTS & PEDIATRICS<br>  4.00 I/P DAYS O/P VISITS/TRIPS TITLE<br>   ALSO SEE REF.# 51 | 33,598 | -456 | 33,142 | R |
| S-3, PART 1, HOSPITAL, LINE 2.00 HMO<br>  4.00 I/P DAYS O/P VISITS/TRIPS TITLE<br>   ALSO SEE REF.# 51 | 9,235 | -1,049 | 8,186 | R |
| S-3, PART 1, HOSPITAL, LINE 6.00 INTENSIVE CARE UNIT<br>  4.00 I/P DAYS O/P VISITS/TRIPS TITLE | 2,976 | -40 | 2,936 | R |
| S-3, PART 1, HOSPITAL, LINE 7.00 CORONARY CARE UNIT<br>  4.00 I/P DAYS O/P VISITS/TRIPS TITLE | 406 | -5 | 401 | R |
| S-3, PART 1, HOSPITAL, LINE 27.00 AMBULANCE TRIPS (01/01/2004 )<br>  4.00 I/P DAYS O/P VISITS/TRIPS TITLE | 2,317 | -6 | 2,311 | R |

**** ADJUSTMENT NO.  12 **** REF:  34 **** WPR: CC-2
To adjust the total hospital Interns & Residents FTEs to agree to the Intermediary's data.
Ref: 42 CFR 412.105(f); CMS Pub. 15-1, Section 2304

| | | | | |
|---|---|---|---|---|
| S-3, PART 1, HOSPITAL, LINE 12.00 TOTAL<br>  7.00 I&R FTES TOTAL | 241.74 | -0.76 | 240.98 | R |

**** ADJUSTMENT NO.  13 **** REF:  51 **** WPR: CJ-11
For adjustment reference numbers 51 thru 56:
These adjustments are needed to make corrections for errors on the PS&R as a result of a claim on Report Type 118 which
was cancelled, but the correction was improperly recorded on Report Type 110 not Report Type 118.

| | | | | |
|---|---|---|---|---|
| S-3, PART 1, HOSPITAL, LINE 1.00 ADULTS & PEDIATRICS<br>  4.00 I/P DAYS O/P VISITS/TRIPS TITLE<br>   ALSO SEE REF.# 5 | 33,142 | 1 | 33,143 | R |
| S-3, PART 1, HOSPITAL, LINE 2.00 HMO<br>  4.00 I/P DAYS O/P VISITS/TRIPS TITLE<br>   ALSO SEE REF.# 5 | 8,186 | 168 | 8,354 | R |

**** ADJUSTMENT NO.  14 **** REF:  900 **** WPR: CA-2.1
TO CORRECT TEACHING SALARIES AND HOURS TO AGREE WITH THE SUPPORTING DOCUMENTATION.

| | | | | |
|---|---|---|---|---|
| S-3, PART 2, LINE 4.00 PHYSICIAN - PART A<br>  1.00 AMOUNT REPORTED | 2,244,443 | -340 | 2,244,103 | R |
| »   4.00 PAID HOURS RELATED TO SALARY IN | 27,294.00 | -4.00 | 27,290.00 | R |
| S-3, PART 2, LINE 4.01 TEACHING PHYSICIAN SALARIES<br>  1.00 AMOUNT REPORTED | 1,648,866 | 339 | 1,649,205 | R |
| »   4.00 PAID HOURS RELATED TO SALARY IN | 20,051.00 | 3.00 | 20,054.00 | R |

**** ADJUSTMENT NO.  15 **** REF:  901 **** WPR: CA-2.1
TO INCLUDE THE SALARIES AND HOURS FOR CONTRACTED INTERNS & RESIDENTS BASED ON THE SUPPORTING DOCUMENTATION SUBMITTED.

| | | | | |
|---|---|---|---|---|
| S-3, PART 2, LINE 6.01 CONTRACT SERVICES, I&R<br>  1.00 AMOUNT REPORTED | 0 | 2,589,084 | 2,589,084 | R |
| »   4.00 PAID HOURS RELATED TO SALARY IN | 0.00 | 130,455.00 | 130,455.00 | R |

**** ADJUSTMENT NO.  16 **** REF:  902 **** WPR: CA-2.1
TO CORRECT EXCLUDED AREA HOURS REPORTED BASED ON THE SUPPORTING DOCUMENTATION.

| | | | | |
|---|---|---|---|---|
| S-3, PART 2, LINE 8.01 EXCLUDED AREA SALARIES<br>  4.00 PAID HOURS RELATED TO SALARY IN | 203,464.00 | 89,632.00 | 293,096.00 | R |

**** ADJUSTMENT NO.  17 **** REF:  903 **** WPR: CA-2.1
TO CORRECT CONTRACT LABOR SALARIES AND HOURS FOR NURSING AND INTERNS & RESIDENTS BASED ON THE DOCUMENTATION SUBMITTED.

| | | | | |
|---|---|---|---|---|
| S-3, PART 2, LINE 9.00 CONTRACT LABOR<br>  1.00 AMOUNT REPORTED | 4,887,484 | 1,975,734 | 6,863,218 | R |
| »   4.00 PAID HOURS RELATED TO SALARY IN | 80,815.00 | 119,798.00 | 200,613.00 | R |

```
DATA FILE  : C:\HFSWIN\04330300.PRV                                    HEALTH FINANCIAL SYSTEMS
FISCAL PERIOD: 01/01/2004 TO 12/31/2004                                        MCRS/PC-WIN
PROVIDER NAME: LUTHERAN MEDICAL CENTER
PROVIDER NO. : 33-0306
```

| COLUMN DESCRIPTION | PREVIOUS VALUE | DIFFERENCE | NEW VALUE | ACTION |
|---|---|---|---|---|

```
**** ADJUSTMENT NO.  18 **** REF:  904 **** WPR: CA-2.1
TO PROPERLY REPORT SALARIES AND HOURS BASED ON THE REVISED DOCUMENTATION RECEIVED 11/6/2006.
```

| | PREVIOUS VALUE | DIFFERENCE | NEW VALUE | ACTION |
|---|---|---|---|---|
| S-3, PART 2, LINE 10.00 CONTRACT LABOR:  PHYSICIAN - PART A<br>» 1.00 AMOUNT REPORTED | 8,933,036 | -216,560 | 8,716,476 | R |
| » 4.00 PAID HOURS RELATED TO SALARY IN | 56,349.00 | -2,298.00 | 54,051.00 | R |
| S-3, PART 2, LINE 10.01 TEACHING PHYSICIAN UNDER CONTRACT<br>» 1.00 AMOUNT REPORTED | 6,562,599 | 1,410,931 | 7,973,530 | R |
| » 4.00 PAID HOURS RELATED TO SALARY IN | 41,397.00 | 46,878.00 | 88,275.00 | R |

```
**** ADJUSTMENT NO.  19 **** REF:  905 **** WPR: CA-2.1
OTHER WAGE-RELATED COSTS ARE BEING REMOVED AS THEY DO NOT MEET THE REQUIRED 1% TEST.
```

| | | | | |
|---|---|---|---|---|
| S-3, PART 2, LINE 14.00 WAGE-RELATED COSTS (OTHER)<br>» 1.00 AMOUNT REPORTED | 452,019 | -452,019 | 0 | R |

```
**** ADJUSTMENT NO.  20 **** REF:  906 **** WPR: CA-2.1
PER PROVIDER'S REQUEST TO ALLOACTE WAGE-RELATED COSTS PROPERLY PER DOCUMENTATION RECEIVED 1/8/2007.
```

| | | | | |
|---|---|---|---|---|
| S-3, PART 2, LINE 13.00 WAGE-RELATED COSTS (CORE)<br>» 1.00 AMOUNT REPORTED<br>ALSO SEE REF.# 907 | 38,490,144 | -1,109,366 | 37,380,778 | R |
| S-3, PART 2, LINE 18.01 PART A TEACHING PHYSICIANS<br>» 1.00 AMOUNT REPORTED<br>ALSO SEE REF.# 907 | 1,851,559 | 48,665 | 1,900,224 | R |
| S-3, PART 2, LINE 19.00 PHYSICIAN PART B<br>» 1.00 AMOUNT REPORTED<br>ALSO SEE REF.# 907 | 14,211,097 | 1,046,863 | 15,257,960 | R |
| S-3, PART 2, LINE 20.00 INTERNS & RESIDENTS (IN APPROVED PRO<br>» 1.00 AMOUNT REPORTED<br>ALSO SEE REF.# 907 | 1,003,266 | 444,083 | 1,447,349 | R |

```
**** ADJUSTMENT NO.  21 **** REF:  907 **** WPR: CA-2.1
TO REMOVE OTHER WAGE-RELATED COSTS, WHICH DO NOT PASS THE REQUIRED 1% TEST.
```

| | | | | |
|---|---|---|---|---|
| S-3, PART 2, LINE 13.00 WAGE-RELATED COSTS (CORE)<br>» 1.00 AMOUNT REPORTED<br>ALSO SEE REF.# 906 | 37,380,778 | -371,723 | 37,009,055 | R |
| S-3, PART 2, LINE 18.00 PHYSICIAN PART A<br>» 1.00 AMOUNT REPORTED<br>ALSO SEE REF.# 906 | 2,586,595 | -6,313 | 2,580,282 | R |
| S-3, PART 2, LINE 18.01 PART A TEACHING PHYSICIANS<br>» 1.00 AMOUNT REPORTED<br>ALSO SEE REF.# 906 | 1,900,224 | -4,638 | 1,895,586 | R |
| S-3, PART 2, LINE 19.00 PHYSICIAN PART B<br>» 1.00 AMOUNT REPORTED<br>ALSO SEE REF.# 906 | 15,257,960 | -37,237 | 15,220,723 | R |
| S-3, PART 2, LINE 20.00 INTERNS & RESIDENTS (IN APPROVED PRO<br>» 1.00 AMOUNT REPORTED<br>ALSO SEE REF.# 906 | 1,447,349 | -16,717 | 1,430,632 | R |

```
**** ADJUSTMENT NO.  22 **** REF:  50 **** WPR: CJ-7
It was necessary to make an adjustment to move amounts on Worksheet A Lines 19.06 & 20.01 to Lines 19.04 & 19.05,
respectively, in order to clear a Level I edit error discovered on the software edit error report. CMS Pub. 15-II. Section
3610
```

| | | | | |
|---|---|---|---|---|
| A, LINE 0.00<br>0.00 COST CENTER DESCRIPTION | N/A FOR MEMO ADJUSTMENT | | 0 | M |

```
**** ADJUSTMENT NO.  23 **** REF:  58 **** WPR: CJ-8
SO ALL O/P CHARGES FOR THIS COST CENTER CAN BE APPROPRIATELY INCLUDED ON W/S D PART.V, LINE 42.
```

| | | | | |
|---|---|---|---|---|
| C, PART 1, LINE 42.00 RADIOLOGY-THERAPEUTIC<br>» 6.00 INPATIENT CHARGES | 526,589 | -204,979 | 321,610 | R |
| » 7.00 OUTPATIENT CHARGES | 1,795,215 | 204,979 | 2,000,194 | R |

```
**** ADJUSTMENT NO.  24 **** REF:  10
D, Part V, Title XVIII, Column 5.01, - PS&R
PS&R Run Date: 02/06/2008, Payment End Date: 02/29/2008
Ref: 42CFR 412.110/413.20
CMS Pub. 15-1 Sec. 2408.4
```

| | | | | |
|---|---|---|---|---|
| D, PART 5, TITLE XVIII, HOSPITAL, LINE 37.00 OPERATING ROOM<br>» 5.01 PPS SERVICES FYB TO 12/31 | 4,910,893 | 339,292 | 5,250,185 | R |
| D, PART 5, TITLE XVIII, HOSPITAL, LINE 41.00 RADIOLOGY-DIAGNOSTIC<br>» 5.01 PPS SERVICES FYB TO 12/31 | 1,273,505 | 228,148 | 1,501,653 | R |
| D, PART 5, TITLE XVIII, HOSPITAL, LINE 42.00 RADIOLOGY-THERAPEUTIC<br>» 5.01 PPS SERVICES FYB TO 12/31 | 1,795,215 | 204,979 | 2,000,194 | R |
| D, PART 5, TITLE XVIII, HOSPITAL, LINE 43.00 RADIOISOTOPE<br>» 5.01 PPS SERVICES FYB TO 12/31 | 404,244 | 2,885 | 407,129 | R |

```
DATA FILE   : C:\HFSWIN\0433U30U6.MLA
FISCAL PERIOD: 01/01/2004 to 12/31/2004                                    HEALTH FINANCIAL SYSTEMS
PROVIDER NAME: LUTHERAN MEDICAL CENTER                                          MCRS/PC-WIN
PROVIDER NO. : 33-0306
```

| COLUMN DESCRIPTION | PREVIOUS VALUE | DIFFERENCE | NEW VALUE | ACTION |
|---|---|---|---|---|

**** ADJUSTMENT NO.  24 **** REF:  10

| | | | | |
|---|---|---|---|---|
| D, PART 5, TITLE XVIII, HOSPITAL, LINE 43.01 CAT SCAN<br>5.01 PPS SERVICES FYB TO 12/31 | 1,538,574 | 74,101 | 1,612,675 | R |
| D, PART 5, TITLE XVIII, HOSPITAL, LINE 44.00 LABORATORY<br>5.01 PPS SERVICES FYB TO 12/31 | 730,911 | -267,296 | 463,615 | R |
| D, PART 5, TITLE XVIII, HOSPITAL, LINE 47.00 BLOOD STORING, PROCESSING & TRANS.<br>5.01 PPS SERVICES FYB TO 12/31 | 426,547 | 13,437 | 439,984 | R |
| D, PART 5, TITLE XVIII, HOSPITAL, LINE 49.00 RESPIRATORY THERAPY<br>5.01 PPS SERVICES FYB TO 12/31 | 34,940 | 432 | 35,372 | R |
| D, PART 5, TITLE XVIII, HOSPITAL, LINE 50.00 PHYSICAL THERAPY<br>5.01 PPS SERVICES FYB TO 12/31 | 8,196 | 200 | 8,396 | R |
| D, PART 5, TITLE XVIII, HOSPITAL, LINE 53.00 ELECTROCARDIOLOGY<br>5.01 PPS SERVICES FYB TO 12/31 | 796,760 | 71,124 | 867,884 | R |
| D, PART 5, TITLE XVIII, HOSPITAL, LINE 54.00 ELECTROENCEPHALOGRAPHY<br>5.01 PPS SERVICES FYB TO 12/31 | 92,021 | 17,264 | 109,285 | R |
| D, PART 5, TITLE XVIII, HOSPITAL, LINE 56.00 DRUGS CHARGED TO PATIENTS<br>5.01 PPS SERVICES FYB TO 12/31 | 1,188,549 | 2,485,638 | 3,674,187 | R |
| D, PART 5, TITLE XVIII, HOSPITAL, LINE 57.00 RENAL DIALYSIS<br>5.01 PPS SERVICES FYB TO 12/31 | 0 | 36,000 | 36,000 | R |
| D, PART 5, TITLE XVIII, HOSPITAL, LINE 58.00 ASC (NON-DISTINCT PART)<br>5.01 PPS SERVICES FYB TO 12/31 | 0 | 473 | 473 | R |
| D, PART 5, TITLE XVIII, HOSPITAL, LINE 59.05 ULTRASOUND DIAGNOSTIC<br>5.01 PPS SERVICES FYB TO 12/31 | 212,882 | 27 | 212,909 | R |
| D, PART 5, TITLE XVIII, HOSPITAL, LINE 59.07 MAGNETIC RESONANCE IMAGING<br>5.01 PPS SERVICES FYB TO 12/31 | 373,066 | 14,298 | 387,364 | R |
| D, PART 5, TITLE XVIII, HOSPITAL, LINE 60.00 CLINIC<br>5.01 PPS SERVICES FYB TO 12/31 | 3,423,946 | 93,926 | 3,517,872 | R |
| D, PART 5, TITLE XVIII, HOSPITAL, LINE 60.04 ALCOHOL CLINIC<br>5.01 PPS SERVICES FYB TO 12/31 | 0 | 330 | 330 | R |
| D, PART 5, TITLE XVIII, HOSPITAL, LINE 60.07 MENTAL HEALTH CLINIC<br>5.01 PPS SERVICES FYB TO 12/31 | 1,986,670 | 133,980 | 2,120,650 | R |
| D, PART 5, TITLE XVIII, HOSPITAL, LINE 61.00 EMERGENCY<br>5.01 PPS SERVICES FYB TO 12/31 | 1,033,362 | 89,724 | 1,123,086 | R |

**** ADJUSTMENT NO.  25 **** REF:  11
D, Part V, Title XVIII, Column 5.02, - PS&R
PS&R Run Date: 02/06/2008, Payment End Date: 02/29/2008
Ref: 42CFR 412.110/413.20
CMS Pub. 15-1 Sec. 2408.4

| | | | | |
|---|---|---|---|---|
| D, PART 5, TITLE XVIII, HOSPITAL, LINE 44.00 LABORATORY<br>5.02 NON-PPS SERVICES | 0 | 5,328 | 5,328 | R |
| D, PART 5, TITLE XVIII, HOSPITAL, LINE 65.00 AMBULANCE SERVICES<br>5.02 NON-PPS SERVICES | 826,229 | 322,576 | 1,148,805 | R |

**** ADJUSTMENT NO.  26 **** REF:  21
D, Part V, Title XVIII, Column 5.01, - PS&R
PS&R Run Date: 02/06/2008, Payment End Date: 02/29/2008
Ref: 42CFR 412.110/413.20
CMS Pub. 15-1 Sec. 2408.4

| | | | | |
|---|---|---|---|---|
| D, PART 5, TITLE XVIII, SUBPROVIDER 1, LINE 41.00 RADIOLOGY-DIAGNOSTIC<br>5.01 PPS SERVICES FYB TO 12/31 | 694 | 0 | 694 | R |
| D, PART 5, TITLE XVIII, SUBPROVIDER 1, LINE 43.00 RADIOISOTOPE<br>5.01 PPS SERVICES FYB TO 12/31 | 503 | 0 | 503 | R |
| D, PART 5, TITLE XVIII, SUBPROVIDER 1, LINE 43.01 CAT SCAN<br>5.01 PPS SERVICES FYB TO 12/31 | 5,532 | 0 | 5,532 | R |
| D, PART 5, TITLE XVIII, SUBPROVIDER 1, LINE 44.00 LABORATORY<br>5.01 PPS SERVICES FYB TO 12/31 | 585 | 0 | 585 | R |
| D, PART 5, TITLE XVIII, SUBPROVIDER 1, LINE 53.00 ELECTROCARDIOLOGY<br>5.01 PPS SERVICES FYB TO 12/31 | 2,408 | 0 | 2,408 | R |
| D, PART 5, TITLE XVIII, SUBPROVIDER 1, LINE 59.05 ULTRASOUND DIAGNOSTIC<br>5.01 PPS SERVICES FYB TO 12/31 | 1,533 | 0 | 1,533 | R |
| D, PART 5, TITLE XVIII, SUBPROVIDER 1, LINE 59.07 MAGNETIC RESONANCE IMAGING<br>5.01 PPS SERVICES FYB TO 12/31 | 1,454 | 0 | 1,454 | R |

**** ADJUSTMENT NO.  27 **** REF:  30
D, Part V, Title XVIII, Column 5.01, - PS&R
PS&R Run Date: 02/06/2008, Payment End Date: 02/29/2008
Ref: 42CFR 412.110/413.20
CMS Pub. 15-1 Sec. 2408.4

| | | | | |
|---|---|---|---|---|
| D, PART 5, TITLE XVIII, SUBPROVIDER 2, LINE 41.00 RADIOLOGY-DIAGNOSTIC<br>5.01 PPS SERVICES FYB TO 12/31 | 2,346 | 471 | 2,817 | R |

```
DATA FILE: Ciiitersua Current.mdb
FISCAL PERIOD: 01/01/2004 TO 12/31/2004                          HEALTH FINANCIAL SYSTEMS
PROVIDER NAME: LUTHERAN MEDICAL CENTER                                    MCRS/PC-WIN
PROVIDER NO. : 33-0306
```

| COLUMN DESCRIPTION | PREVIOUS VALUE | DIFFERENCE | NEW VALUE | ACTION |
|---|---|---|---|---|
| **** ADJUSTMENT NO. 27 **** REF: 30 | | | | |
| D, PART 5, TITLE XVIII, SUBPROVIDER 2, LINE 43.00 RADIOISOTOPE<br>5.01 PPS SERVICES FYB TO 12/31 | 2,871 | 0 | 2,871 | R |
| D, PART 5, TITLE XVIII, SUBPROVIDER 2, LINE 43.01 CAT SCAN<br>5.01 PPS SERVICES FYB TO 12/31 | 3,905 | 781 | 4,686 | R |
| D, PART 5, TITLE XVIII, SUBPROVIDER 2, LINE 44.00 LABORATORY<br>5.01 PPS SERVICES FYB TO 12/31 | 5,526 | 0 | 5,526 | R |
| D, PART 5, TITLE XVIII, SUBPROVIDER 2, LINE 53.00 ELECTROCARDIOLOGY<br>5.01 PPS SERVICES FYB TO 12/31 | 14,096 | 256 | 14,352 | R |
| D, PART 5, TITLE XVIII, SUBPROVIDER 2, LINE 54.00 ELECTROENCEPHALOGRAPHY<br>5.01 PPS SERVICES FYB TO 12/31 | 882 | 0 | 882 | R |
| D, PART 5, TITLE XVIII, SUBPROVIDER 2, LINE 59.05 ULTRASOUND DIAGNOSTIC<br>5.01 PPS SERVICES FYB TO 12/31 | 1,833 | 0 | 1,833 | R |
| D, PART 5, TITLE XVIII, SUBPROVIDER 2, LINE 59.07 MAGNETIC RESONANCE IMAGING<br>5.01 PPS SERVICES FYB TO 12/31 | 1,454 | 0 | 1,454 | R |

```
**** ADJUSTMENT NO. 28 **** REF: 13
D, Part VI, Title XVIII, Column 1.00. - PS&R
PS&R Run Date: 02/06/2008, Payment End Date: 02/29/2008
Ref: 42CFR 412.110/413.20
CMS PUB. 15-1 Sec. 2408.4
```

| | | | | |
|---|---|---|---|---|
| D, PART 6, TITLE XVIII, HOSPITAL, LINE 2.00 PROGRAM VACCINE CHARGES<br>1.00 VACCINE COST APPORTIONMENT | 0 | 24,145 | 24,145 | R |

```
**** ADJUSTMENT NO. 29 **** REF:  42 **** WPR: C3-1
To adjust Trended and Expected Costs to agree to the Intermediary's calculation for the TEFRA bonus payments.
Ref: 42 CFR 413.40(d)(5); CMS Pub. 15-II, Section 3622.2
```

| | | | | |
|---|---|---|---|---|
| D-1, TITLE XVIII, SUBPROVIDER 1, LINE 58.01 LESSOR OF LINES 53/54 OR 55 FROM THE<br>1.00 COLUMN 1 | 0.00 | 13,818.64 | 13,818.64 | R |
| D-1, TITLE XVIII, SUBPROVIDER 1, LINE 58.02 LESSOR OF LINES 53/54 OR 55 FROM PRI<br>1.00 COLUMN 1 | 0.00 | 14,613.84 | 14,613.84 | R |

```
**** ADJUSTMENT NO. 30 **** REF:  2
D-4, Title XVIII, Column 2.00. - PS&R
PS&R Run Date: 02/06/2008, Payment End Date: 02/29/2008
Ref: 42CFR 412.110/413.20
CMS PUB. 15-1 Sec. 2408.4
```

| | | | | |
|---|---|---|---|---|
| D-4, TITLE XVIII, HOSPITAL, LINE 25.00 ADULTS & PEDIATRICS<br>2.00 INPATIENT PROGRAM CHARGES<br>ALSO SEE REF.# 52 | 42,101,043 | -581,793 | 41,519,250 | R |
| D-4, TITLE XVIII, HOSPITAL, LINE 26.00 INTENSIVE CARE UNIT<br>2.00 INPATIENT PROGRAM CHARGES | 6,935,963 | -74,163 | 6,861,800 | R |
| D-4, TITLE XVIII, HOSPITAL, LINE 27.00 CORONARY CARE UNIT<br>2.00 INPATIENT PROGRAM CHARGES | 6,657 | -57 | 6,600 | R |
| D-4, TITLE XVIII, HOSPITAL, LINE 37.00 OPERATING ROOM<br>2.00 INPATIENT PROGRAM CHARGES | 10,379,281 | -74,087 | 10,305,194 | R |
| D-4, TITLE XVIII, HOSPITAL, LINE 39.00 DELIVERY ROOM & LABOR ROOM<br>2.00 INPATIENT PROGRAM CHARGES | 2,154 | -37 | 2,117 | R |
| D-4, TITLE XVIII, HOSPITAL, LINE 41.00 RADIOLOGY-DIAGNOSTIC<br>2.00 INPATIENT PROGRAM CHARGES<br>ALSO SEE REF.# 52 | 2,929,886 | -46,145 | 2,883,741 | R |
| D-4, TITLE XVIII, HOSPITAL, LINE 42.00 RADIOLOGY-THERAPEUTIC<br>2.00 INPATIENT PROGRAM CHARGES | 136,018 | 2,957 | 138,975 | R |
| D-4, TITLE XVIII, HOSPITAL, LINE 43.00 RADIOISOTOPE<br>2.00 INPATIENT PROGRAM CHARGES | 753,556 | -15,948 | 737,608 | R |
| D-4, TITLE XVIII, HOSPITAL, LINE 43.01 CAT SCAN<br>2.00 INPATIENT PROGRAM CHARGES<br>ALSO SEE REF.# 52 | 3,346,764 | -42,695 | 3,304,069 | R |
| D-4, TITLE XVIII, HOSPITAL, LINE 44.00 LABORATORY<br>2.00 INPATIENT PROGRAM CHARGES<br>ALSO SEE REF.# 52 | 12,811,290 | -154,214 | 12,657,076 | R |
| D-4, TITLE XVIII, HOSPITAL, LINE 47.00 BLOOD STORING, PROCESSING & TRANS.<br>2.00 INPATIENT PROGRAM CHARGES | 1,185,638 | -3,141 | 1,182,497 | R |
| D-4, TITLE XVIII, HOSPITAL, LINE 49.00 RESPIRATORY THERAPY<br>2.00 INPATIENT PROGRAM CHARGES | 1,114,707 | -12,365 | 1,102,342 | R |
| D-4, TITLE XVIII, HOSPITAL, LINE 50.00 PHYSICAL THERAPY<br>2.00 INPATIENT PROGRAM CHARGES | 894,337 | -13,524 | 880,813 | R |
| D-4, TITLE XVIII, HOSPITAL, LINE 53.00 ELECTROCARDIOLOGY<br>2.00 INPATIENT PROGRAM CHARGES<br>ALSO SEE REF.# 52 | 3,760,029 | -59,986 | 3,700,043 | R |
| D-4, TITLE XVIII, HOSPITAL, LINE 54.00 ELECTROENCEPHALOGRAPHY<br>2.00 INPATIENT PROGRAM CHARGES<br>ALSO SEE REF.# 52 | 166,541 | -2,837 | 163,704 | R |

```
DATA FILE    : C:\HFSWIN\04\33U300.0RG\
FISCAL PERIOD: 01/01/2004 TO 12/31/2004                              HEALTH FINANCIAL SYSTEMS
PROVIDER NAME: LUTHERAN MEDICAL CENTER                                     MCRS/PC-WIN
PROVIDER NO. : 33-0306
```

| COLUMN DESCRIPTION | PREVIOUS VALUE | DIFFERENCE | NEW VALUE | ACTION |
|---|---|---|---|---|
| **** ADJUSTMENT NO.  30 **** REF:   2 | | | | |
| D-4, TITLE XVIII, HOSPITAL, LINE 56.00 DRUGS CHARGED TO PATIENTS | | | | R |
| 2.00 INPATIENT PROGRAM CHARGES   5,772,914 | | +45,776 | 5,727,138 | |
| ALSO SEE REF.# 52 | | | | |
| D-4, TITLE XVIII, HOSPITAL, LINE 57.00 RENAL DIALYSIS | | | | R |
| 2.00 INPATIENT PROGRAM CHARGES   848,198 | | -10,173 | 838,025 | |
| D-4, TITLE XVIII, HOSPITAL, LINE 59.05 ULTRASOUND DIAGNOSTIC | | | | R |
| 2.00 INPATIENT PROGRAM CHARGES   343,681 | | -4,587 | 339,094 | |
| D-4, TITLE XVIII, HOSPITAL, LINE 59.07 MAGNETIC RESONANCE IMAGING | | | | R |
| 2.00 INPATIENT PROGRAM CHARGES   751,305 | | -17,399 | 733,906 | |
| D-4, TITLE XVIII, HOSPITAL, LINE 61.00 EMERGENCY | | | | R |
| 2.00 INPATIENT PROGRAM CHARGES   1,969,491 | | -33,503 | 1,935,988 | |
| ALSO SEE REF.# 52 | | | | |
| **** ADJUSTMENT NO.   31 **** REF:   52 **** WPR: CJ-11 | | | | |
| See adjustment explanation for adjustment reference number 51. | | | | |
| D-4, TITLE XVIII, HOSPITAL, LINE 25.00 ADULTS & PEDIATRICS | | | | A |
| 2.00 INPATIENT PROGRAM CHARGES   41,519,250 | | 1,250 | 41,520,500 | |
| ALSO SEE REF.# 2 | | | | |
| D-4, TITLE XVIII, HOSPITAL, LINE 41.00 RADIOLOGY-DIAGNOSTIC | | | | A |
| 2.00 INPATIENT PROGRAM CHARGES   2,883,741 | | 703 | 2,884,444 | |
| ALSO SEE REF.# 2 | | | | |
| D-4, TITLE XVIII, HOSPITAL, LINE 43.01 CAT SCAN | | | | A |
| 2.00 INPATIENT PROGRAM CHARGES   3,304,069 | | 3,139 | 3,307,208 | |
| ALSO SEE REF.# 2 | | | | |
| D-4, TITLE XVIII, HOSPITAL, LINE 44.00 LABORATORY | | | | A |
| 2.00 INPATIENT PROGRAM CHARGES   12,657,076 | | 1,007 | 12,658,083 | |
| ALSO SEE REF.# 2 | | | | |
| D-4, TITLE XVIII, HOSPITAL, LINE 53.00 ELECTROCARDIOLOGY | | | | A |
| 2.00 INPATIENT PROGRAM CHARGES   3,700,043 | | 2,344 | 3,702,387 | |
| ALSO SEE REF.# 2 | | | | |
| D-4, TITLE XVIII, HOSPITAL, LINE 54.00 ELECTROENCEPHALOGRAPHY | | | | A |
| 2.00 INPATIENT PROGRAM CHARGES   163,704 | | 441 | 164,145 | |
| D-4, TITLE XVIII, HOSPITAL, LINE 56.00 DRUGS CHARGED TO PATIENTS | | | | A |
| 2.00 INPATIENT PROGRAM CHARGES   5,727,138 | | 1 | 5,727,139 | |
| ALSO SEE REF.# 2 | | | | |
| D-4, TITLE XVIII, HOSPITAL, LINE 61.00 EMERGENCY | | | | A |
| 2.00 INPATIENT PROGRAM CHARGES   1,935,988 | | 510 | 1,936,498 | |
| ALSO SEE REF.# 2 | | | | |
| **** ADJUSTMENT NO. 32 **** REF:  15 | | | | |
| D-4, Title XVIII, Column 2.00, - PS&R | | | | |
| PS&R Run Date: 02/06/2008, Payment End Date: 02/29/2008 | | | | |
| Ref: 42CFR 412.110/413.20 | | | | |
| CMS PUB. 15-1 Sec. 2408.4 | | | | |
| D-4, TITLE XVIII, SUBPROVIDER 1, LINE 31.00 SUBPROVIDER I | | | | R |
| 2.00 INPATIENT PROGRAM CHARGES   3,076,759 | | -170,659 | 2,906,100 | |
| D-4, TITLE XVIII, SUBPROVIDER 1, LINE 37.00 OPERATING ROOM | | | | R |
| 2.00 INPATIENT PROGRAM CHARGES   2,175 | | -269 | 1,906 | |
| D-4, TITLE XVIII, SUBPROVIDER 1, LINE 41.00 RADIOLOGY-DIAGNOSTIC | | | | R |
| 2.00 INPATIENT PROGRAM CHARGES   9,083 | | -506 | 8,577 | |
| D-4, TITLE XVIII, SUBPROVIDER 1, LINE 43.00 RADIOISOTOPE | | | | R |
| 2.00 INPATIENT PROGRAM CHARGES   753 | | -56 | 697 | |
| D-4, TITLE XVIII, SUBPROVIDER 1, LINE 43.01 CAT SCAN | | | | R |
| 2.00 INPATIENT PROGRAM CHARGES   21,990 | | -2,406 | 19,584 | |
| D-4, TITLE XVIII, SUBPROVIDER 1, LINE 44.00 LABORATORY | | | | R |
| 2.00 INPATIENT PROGRAM CHARGES   141,431 | | -10,565 | 130,866 | |
| D-4, TITLE XVIII, SUBPROVIDER 1, LINE 47.00 BLOOD STORING, PROCESSING & TRANS. | | | | R |
| 2.00 INPATIENT PROGRAM CHARGES   13,218 | | -977 | 12,241 | |
| D-4, TITLE XVIII, SUBPROVIDER 1, LINE 49.00 RESPIRATORY THERAPY | | | | R |
| 2.00 INPATIENT PROGRAM CHARGES   1,656 | | -122 | 1,534 | |
| D-4, TITLE XVIII, SUBPROVIDER 1, LINE 50.00 PHYSICAL THERAPY | | | | R |
| 2.00 INPATIENT PROGRAM CHARGES   2,770 | | -314 | 2,456 | |
| D-4, TITLE XVIII, SUBPROVIDER 1, LINE 53.00 ELECTROCARDIOLOGY | | | | R |
| 2.00 INPATIENT PROGRAM CHARGES   21,601 | | -5,246 | 16,355 | |
| D-4, TITLE XVIII, SUBPROVIDER 1, LINE 54.00 ELECTROENCEPHALOGRAPHY | | | | R |
| 2.00 INPATIENT PROGRAM CHARGES   476 | | -35 | 441 | |
| D-4, TITLE XVIII, SUBPROVIDER 1, LINE 56.00 DRUGS CHARGED TO PATIENTS | | | | R |
| 2.00 INPATIENT PROGRAM CHARGES   97,020 | | -4,473 | 92,547 | |
| D-4, TITLE XVIII, SUBPROVIDER 1, LINE 59.05 ULTRASOUND DIAGNOSTIC | | | | R |
| 2.00 INPATIENT PROGRAM CHARGES   7,022 | | -1,455 | 5,567 | |

```
DATA FILE    : C:\HFSWIN\D433J3U0.MLA
FISCAL PERIOD: 01/01/2004 TO 12/31/2004                           HEALTH FINANCIAL SYSTEMS
PROVIDER NAME: LUTHERAN MEDICAL CENTER                                MCRS/PC-WIN
PROVIDER NO. : 33-0306
```

| COLUMN DESCRIPTION | PREVIOUS VALUE | DIFFERENCE | NEW VALUE | ACTION |
|---|---|---|---|---|
| **** ADJUSTMENT NO.  32 **** REF:  15 | | | | |
| D-4, TITLE XVIII, SUBPROVIDER 1, LINE 61.00 EMERGENCY | | | | R |
| 2.00 INPATIENT PROGRAM CHARGES | 41,199 | -3,204 | 37,995 | |
| | | | | |
| **** ADJUSTMENT NO.  33 **** REF:  24 | | | | |
| D-4, Title XVIII, Column 2.00, - PS&R | | | | |
| PS&R Run Date: 02/06/2008, Payment End Date: 02/29/2008 | | | | |
| Ref: 42CFR 412.110/413.20 | | | | |
| CMS PUB. 15-1 Sec. 2408.4 | | | | |
| | | | | |
| D-4, TITLE XVIII, SUBPROVIDER 2, LINE 31.01 SUBPROVIDER II - REHAB | | | | R |
| 2.00 INPATIENT PROGRAM CHARGES | 5,335,000 | -7,500 | 5,327,500 | |
| D-4, TITLE XVIII, SUBPROVIDER 2, LINE 37.00 OPERATING ROOM | | | | R |
| 2.00 INPATIENT PROGRAM CHARGES | 165,282 | -2,093 | 163,189 | |
| D-4, TITLE XVIII, SUBPROVIDER 2, LINE 41.00 RADIOLOGY-DIAGNOSTIC | | | | R |
| 2.00 INPATIENT PROGRAM CHARGES | 56,239 | 1,781 | 58,020 | |
| D-4, TITLE XVIII, SUBPROVIDER 2, LINE 43.00 RADIOISOTOPE | | | | R |
| 2.00 INPATIENT PROGRAM CHARGES | 20,680 | -29 | 20,651 | |
| D-4, TITLE XVIII, SUBPROVIDER 2, LINE 43.01 CAT SCAN | | | | R |
| 2.00 INPATIENT PROGRAM CHARGES | 70,819 | -100 | 70,719 | |
| D-4, TITLE XVIII, SUBPROVIDER 2, LINE 44.00 LABORATORY | | | | R |
| 2.00 INPATIENT PROGRAM CHARGES | 351,351 | -494 | 350,857 | |
| D-4, TITLE XVIII, SUBPROVIDER 2, LINE 47.00 BLOOD STORING, PROCESSING & TRANS. | | | | R |
| 2.00 INPATIENT PROGRAM CHARGES | 8,446 | -12 | 8,434 | |
| D-4, TITLE XVIII, SUBPROVIDER 2, LINE 49.00 RESPIRATORY THERAPY | | | | R |
| 2.00 INPATIENT PROGRAM CHARGES | 4,276 | -6 | 4,270 | |
| D-4, TITLE XVIII, SUBPROVIDER 2, LINE 50.00 PHYSICAL THERAPY | | | | R |
| 2.00 INPATIENT PROGRAM CHARGES | 2,108,475 | -2,964 | 2,105,511 | |
| D-4, TITLE XVIII, SUBPROVIDER 2, LINE 53.00 ELECTROCARDIOLOGY | | | | R |
| 2.00 INPATIENT PROGRAM CHARGES | 89,997 | -127 | 89,870 | |
| D-4, TITLE XVIII, SUBPROVIDER 2, LINE 54.00 ELECTROENCEPHALOGRAPHY | | | | R |
| 2.00 INPATIENT PROGRAM CHARGES | 2,650 | -4 | 2,646 | |
| D-4, TITLE XVIII, SUBPROVIDER 2, LINE 56.00 DRUGS CHARGED TO PATIENTS | | | | R |
| 2.00 INPATIENT PROGRAM CHARGES | 19,612 | -1,030 | 18,582 | |
| D-4, TITLE XVIII, SUBPROVIDER 2, LINE 57.00 RENAL DIALYSIS | | | | R |
| 2.00 INPATIENT PROGRAM CHARGES | 34,048 | 1,482 | 35,530 | |
| D-4, TITLE XVIII, SUBPROVIDER 2, LINE 59.05 ULTRASOUND DIAGNOSTIC | | | | R |
| 2.00 INPATIENT PROGRAM CHARGES | 19,990 | -28 | 19,962 | |
| D-4, TITLE XVIII, SUBPROVIDER 2, LINE 59.07 MAGNETIC RESONANCE IMAGING | | | | R |
| 2.00 INPATIENT PROGRAM CHARGES | 32,761 | -46 | 32,715 | |
| D-4, TYTLE XVIII, SUBPROVIDER 2, LINE 60.00 CLINIC | | | | R |
| 2.00 INPATIENT PROGRAM CHARGES | 528 | -528 | 0 | |
| | | | | |
| **** ADJUSTMENT NO.  34 **** REF:  3 | | | | |
| E, Part A, Title XVIII, Column 1.00, - PS&R | | | | |
| PS&R Run Date: 02/06/2008, Payment End Date: 02/29/2008 | | | | |
| Ref: 42CFR 412.110/413.20 | | | | |
| CMS PUB. 15-1 Sec. 2408.4 | | | | |
| | | | | |
| E, PART A, TITLE XVIII, HOSPITAL, LINE 1.00 OTHER THAN OUT PAY PRIOR TO OCT 1 | | | | R |
| 1.00 | 9,254,814 | -73,058 | 9,181,756 | |
| E, PART A, TITLE XVIII, HOSPITAL, LINE 1.01 OTHER THAN OUT PAY ON/AFTER OCT 1 | | | | R |
| 1.00 | 10,944,039 | 130,457 | 11,074,496 | |
| ALSO SEE REF.# 53 | | | | |
| E, PART A, TITLE XVIII, HOSPITAL, LINE 1.03 PAYMENTS PRIOR TO OCTOBER 1 | | | | R |
| 1.00 | 2,165,164 | 32,878 | 2,198,042 | |
| E, PART A, TITLE XVIII, HOSPITAL, LINE 1.04 PAYMENTS >= 10/01 AND < 01/01 | | | | R |
| 1.00 | 2,395,268 | 27,398 | 2,422,666 | |
| ALSO SEE REF.# 53 | | | | |
| E, PART A, TITLE XVIII, HOSPITAL, LINE 1.07 PAYMENTS FOR DISCHARGES >= 04/01/200 | | | | R |
| 1.00 | 18,507,628 | -79,977 | 18,427,651 | |
| E, PART A, TITLE XVIII, HOSPITAL, LINE 1.08 SIMULATED PAYMENTS FROM THE PS&R >= | | | | R |
| 1.00 | 4,212,831 | -906 | 4,211,925 | |
| E, PART A, TITLE XVIII, HOSPITAL, LINE 2.01 OUTLIER PAYMENTS FOR DISCHARGES >= 1 | | | | R |
| 1.00 | 442,016 | -13,697 | 428,319 | |
| E, PART A, TITLE XVIII, HOSPITAL, LINE 17.00 PRIMARY PAYER PAYMENTS | | | | R |
| 1.00 | 39,824 | 0 | 39,824 | |
| E, PART A, TITLE XVIII, HOSPITAL, LINE 19.00 DEDUCTIBLES BILLED TO PROGRAM BENEFI | | | | R |
| 1.00 | 2,608,548 | 3,468 | 2,612,016 | |
| E, PART A, TITLE XVIII, HOSPITAL, LINE 20.00 COINSURANCE BILLED TO PROGRAM BENEFI | | | | R |
| 1.00 | 539,703 | 1,314 | 541,017 | |

```
DEC-16-2008 01:55PM  FROM-                                              T-886  P.019/028  F-471
```

```
DATA FILE  : C:\HFSWIN\D433U306.MCR                                    HEALTH FINANCIAL SYSTEMS
FISCAL PERIOD: 01/01/2004 TO 12/31/2004                                 MCRS/PC-WIN
PROVIDER NAME: LUTHERAN MEDICAL CENTER
PROVIDER NO. : 33-0306
```

| COLUMN DESCRIPTION | PREVIOUS VALUE | DIFFERENCE | NEW VALUE | ACTION |
|---|---|---|---|---|

**** ADJUSTMENT NO.  35 **** REF:  35 **** WPR: CC-2
To adjust the Indirect Medical Education Intern & Resident FTE count to agree to the Intermediary's data.
Ref: 42 CFR 412.105(F); CMS Pub. 15-I, Section 2304

| E, PART A, TITLE XVIII, HOSPITAL, LINE 3.08 FTE COUNT FOR ALLOPATHIC AND OSTEOPA | 121.40 | -0.76 | 120.64 | R |
| 1.00 | | | | |

**** ADJUSTMENT NO.  36 **** REF:  37 **** WPR: CE-1
To update SSI ratio per the CMS listing.
Ref: 42 CFR 412.106(b)(2); CMS Pub. 15-II, Section 3630.1

| E, PART A, TITLE XVIII, HOSPITAL, LINE 4.00 PERCENTAGE OF SSI RECIPIENT PATIENT | 12.75 | 2.58 | 15.33 | R |
| 1.00 | | | | |

**** ADJUSTMENT NO.  37 **** REF:  39 **** WPR: CE-2
To adjust the operating DSH amount to agree with the Intermediary's data.
Ref: 42 CFR 412.106(d); CMS Pub. 15-II, Section 3604 & 3630

| E, PART A, TITLE XVIII, HOSPITAL, LINE 4.03 ALLOWABLE DISPROPORTIONATE SHARE PER | 30.37 | 2.13 | 32.50 | R |
| 0.00 | 30.37 | 2.13 | 32.50 | R |
| 1.00 | | | | |

**** ADJUSTMENT NO.  38 **** REF:  40 **** WPR: CG-1
To adjust reimbursable bad debts to actual documentation supplied by the provider.
Ref: 42 CFR 413.24(a) & (e); CMS Pub. 15-I, Section 304 & 308

| E, PART A, TITLE XVIII, HOSPITAL, LINE 21.00 REIMBURSABLE BAD DEBTS (SEE INSTRUCT | 135,282 | -24,947 | 110,335 | R |
| 1.00    ALSO SEE REF.# 44 | | | | |

**** ADJUSTMENT NO.  39 **** REF:  44 **** WPR: CG-1
To remove bad debts due to the lack of a reasonable collection effort (less than a 120 day collection effort).
Ref: 42 CFR 413.89(e)(2); CMS Pub. 15-I, Section 310.2

| E, PART A, TITLE XVIII, HOSPITAL, LINE 21.00 REIMBURSABLE BAD DEBTS (SEE INSTRUCT | 110,335 | -6,060 | 104,275 | R |
| 1.00    ALSO SEE REF.# 40 | | | | |

**** ADJUSTMENT NO.  40 **** REF:  46 **** WPR: CC-2
To update prior year and penultimate year FTE counts for Indirect Medical Education to agree with the
Intermediary's data.
Ref: 42 CFR 412.105; CMS Pub. 15-II, Section 3630.1

| E, PART A, TITLE XVIII, HOSPITAL, LINE 3.15 TOTAL ALLOWABLE FTE COUNT FOR THE PR | 239.46 | -0.12 | 239.34 | R |
| 1.00 | | | | |
| E, PART A, TITLE XVIII, HOSPITAL, LINE 3.16 TOTAL ALLOWABLE FTE COUNT FOR THE PE | 242.75 | -0.06 | 242.69 | R |
| 1.00 | | | | |

**** ADJUSTMENT NO.  41 **** REF:  47 **** WPR: CC-2
To update prior year intern & resident to bed ratio to agree with Intermediary's data.
Ref: 42 CFR 412.105; CMS Pub. 15-II, Section 3630.1

| E, PART A, TITLE XVIII, HOSPITAL, LINE 3.19 PRIOR YEAR RESIDENT TO BED RATIO (SE | 0.762611 | -0.000382 | 0.762229 | R |

**** ADJUSTMENT NO.  42 **** REF:  53 **** WPR: CJ-11
See adjustment explanation for adjustment reference number 51.

| E, PART A, TITLE XVIII, HOSPITAL, LINE 1.01 OTHER THAN OUT PAY ON/AFTER OCT 1 | 11,074,496 | 7,657 | 11,082,153 | A |
| 1.00    ALSO SEE REF.# 3 | | | | |
| E, PART A, TITLE XVIII, HOSPITAL, LINE 1.04 PAYMENTS >= 10/01 AND < 01/01 | 2,422,666 | -7,657 | 2,415,009 | A |
| 1.00    ALSO SEE REF.# 3 | | | | |

**** ADJUSTMENT NO.  43 **** REF:  12
E, Part B, Title XVIII, Column 1.00, - PS&R
PS&R Run Date: 02/06/2008, Payment End Date: 02/29/2008
Ref: 42CFR 412.110/413.20
CMS PUB. 15-I Sec. 2408.4

| E, PART B, TITLE XVIII, HOSPITAL, LINE 1.02 PPS PAYMENTS RECEIVED INCLUDING OUTL | 8,814,136 | 801,521 | 9,615,657 | R |
| 1.00 | | | | |
| E, PART B, TITLE XVIII, HOSPITAL, LINE 18.00 DEDUCTIBLES AND COINSURANCE (SEE INS | 143,555 | 59,096 | 202,651 | R |
| 1.00 | | | | |
| E, PART B, TITLE XVIII, HOSPITAL, LINE 18.01 DEDUCTIBLES AND COINSURANCE RELATING | 2,509,955 | 186,415 | 2,696,370 | R |
| 1.00 | | | | |
| E, PART B, TITLE XVIII, HOSPITAL, LINE 24.00 PRIMARY PAYER PAYMENTS | 406 | -186 | 220 | R |
| 1.00 | | | | |
| E, PART B, TITLE XVIII, HOSPITAL, LINE 30.99 OTHER ADJUSTMENTS (SPECIFY) | 0 | -2 | -2 | R |
| 1.00 | | | | |

DEC-18-2008 01:55PM   FROM-

```
DATA FILE    : C:\HFSWIN\0455U3U6.MLA                                    HEALTH FINANCIAL SYSTEMS
FISCAL PERIOD: 01/01/2004 TO 12/31/2004                                         MCRS/PC-WIN
PROVIDER NAME: LUTHERAN MEDICAL CENTER
PROVIDER NO. : 33-0306
-----------------------------------------------------------------------------------------------
                                           PREVIOUS VALUE    DIFFERENCE      NEW VALUE      ACTION
      COLUMN DESCRIPTION
-----------------------------------------------------------------------------------------------
```

**** ADJUSTMENT NO.  44 **** REF:  41 **** WPR: CG-1
To adjust reimbursable bad debts to actual documentation supplied by the provider.
Ref: 42 CFR 413.24(a) & (e); CMS Pub. 15-I, Section 304 & 308

E, PART B, TITLE XVIII, HOSPITAL, LINE 27.00 BAD DEBTS (SEE INSTRUCTIONS)                     R
                                             73,332        -11,573         61,759
»  1.00
           ALSO SEE REF.# 45


**** ADJUSTMENT NO.  45 **** REF:  45 **** WPR: CG-1
To remove bad debts due to the lack of a reasonable collection effort (less than a 120 day collection effort).
Ref: 42 CFR 413.89(e)(2); CMS Pub. 15-I, Section 310.2

E, PART B, TITLE XVIII, HOSPITAL, LINE 27.00 BAD DEBTS (SEE INSTRUCTIONS)                     R
                                             61,759           -800         60,959
»  1.00
           ALSO SEE REF.# 41


**** ADJUSTMENT NO.  46 **** REF:  22
E, Part B, Title XVIII, Column 1.00, - PS&R
PS&R Run Date: 02/06/2008, Payment End Date: 02/29/2008
Ref: 42CFR 412.110/413.20
CMS PUB. 15-1 Sec. 2408.4

E, PART B, TITLE XVIII, SUBPROVIDER 1, LINE 1.02 PPS PAYMENTS RECEIVED INCLUDING OUTL        R
                                              3,817             0          3,817
   1.00
E, PART B, TITLE XVIII, SUBPROVIDER 1, LINE 18.01 DEDUCTIBLES AND COINSURANCE RELATING       R
                                              1,872             0          1,872
   1.00


**** ADJUSTMENT NO.  47 **** REF:  31
E, Part B, Title XVIII, Column 1.00, - PS&R
PS&R Run Date: 02/06/2008, Payment End Date: 02/29/2008
Ref: 42CFR 412.110/413.20
CMS PUB. 15-1 Sec. 2408.4

E, PART B, TITLE XVIII, SUBPROVIDER 2, LINE 1.02 PPS PAYMENTS RECEIVED INCLUDING OUTL        R
                                              9,615           447         10,062
   1.00
E, PART B, TITLE XVIII, SUBPROVIDER 2, LINE 18.01 DEDUCTIBLES AND COINSURANCE RELATING       R
                                              4,266           202          4,468
   1.00


**** ADJUSTMENT NO.  48 **** REF:  7
E-1, Title XVIII, Column 2.00, - PS&R
PS&R Run Date: 02/06/2008, Payment End Date: 02/29/2008
Ref: 42CFR 412.110/413.20
CMS PUB. 15-1 Sec. 2408.4

E-1, TITLE XVIII, HOSPITAL, LINE 1.00 INTERIM PAYMENTS PAID TO PROVIDER                       R
                                         80,450,199    -10,277,666     70,172,533
   2.00 PART A AMOUNT                                                                         R
           ALSO SEE REF.# 54
                                         70,172,533     8,336,830     78,509,363


**** ADJUSTMENT NO.  49 **** REF:  8
E-1, Title XVIII, Column 4.00, - PS&R
PS&R Run Date: 02/06/2008, Payment End Date: 02/29/2008
Ref: 42CFR 412.110/413.20
CMS PUB. 15-1 Sec. 2408.4

E-1, TITLE XVIII, HOSPITAL, LINE 1.00 INTERIM PAYMENTS PAID TO PROVIDER                       R
                                          6,693,083       806,303      7,499,386
   4.00 PART A AMOUNT
                                          7,499,386     1,892,441      9,391,827


**** ADJUSTMENT NO.  50 **** REF:  54 **** WPR: CJ-11
See adjustment explanation for adjustment reference number 51.

E-1, TITLE XVIII, HOSPITAL, LINE 1.00 INTERIM PAYMENTS PAID TO PROVIDER                       A
                                         78,509,363        -2,854     78,506,509
   2.00 PART A AMOUNT
           ALSO SEE REF.# 7


**** ADJUSTMENT NO.  51 **** REF:  57 **** WPR: PS&R
The tentative's notice of program reimbursement date of 08/01/2005 has been updated for each unit.
The psych retroactive settlements' dates of 08/18/2004 and 10/15/2004, respectively have been updated.
PS&R Run Date: 02/06/2008, Payment End Date: 02/29/2008
Ref: 42 CFR 412.110/413.20
CMS PUB. 15-1 Sec. 2408.4

E-1, TITLE XVIII, HOSPITAL, LINE 5.01 TENTATIVE TO PROVIDER                08/01/200          M
»  1.00 PART A MM/DD/YYYY             N/A FOR MEMO ADJUSTMENT
»  2.00 PART A AMOUNT                           0         640,859        640,859          M
»  3.00 PART B MM/DD/YYYY             N/A FOR MEMO ADJUSTMENT                                  R
»  4.00 PART B AMOUNT                           0          72,760         72,760

```
DATA FILE    : C:\HFSWIN\D455U3U6.MLA                                    HEALTH FINANCIAL SYSTEMS
FISCAL PERIOD: 01/01/2004 TO 12/31/2004                                     MCRS/PC-WIN
PROVIDER NAME: LUTHERAN MEDICAL CENTER
PROVIDER NO. : 33-0306
-----------------------------------------------------------------------------------------------------
   COLUMN DESCRIPTION                    PREVIOUS VALUE      DIFFERENCE      NEW VALUE          ACTION
-----------------------------------------------------------------------------------------------------
```

**** ADJUSTMENT NO. 52 **** REF:   18
E-1, Title XVIII, Column 2.00, - PS&R
PS&R Run Date: 02/06/2008, Payment End Date: 02/29/2008
Ref: 42CFR 412.110/413.20
CMS PUB. 15-1 Sec. 2408.4

    E-1, TITLE XVIII, SUBPROVIDER 1, LINE 1.00 INTERIM PAYMENTS PAID TO PROVIDER                R
      2.00 PART A AMOUNT                    1,762,506          18,792          1,781,298

**** ADJUSTMENT NO. 53 **** REF:   19
E-1, Title XVIII, Column 4.00, - PS&R
PS&R Run Date: 02/06/2008, Payment End Date: 02/29/2008
Ref: 42CFR 412.110/413.20
CMS PUB. 15-1 Sec. 2408.4

    E-1, TITLE XVIII, SUBPROVIDER 1, LINE 1.00 INTERIM PAYMENTS PAID TO PROVIDER                R
      4.00 PART B AMOUNT                       1,945               0              1,945

**** ADJUSTMENT NO. 54 **** REF:   57 **** WPR: PS&R
The tentative's notice of program reimbursement date of 08/01/2005 has been updated for each unit.
The psych retroactive settlements' dates of 08/18/2004 and 10/15/2004, respectively have been updated.
PS&R Run Date: 02/06/2008, Payment End Date: 02/29/2008
Ref: 42 CFR 412.110/413.20
CMS PUB. 15-1 Sec. 2408.4

    E-1, TITLE XVIII, SUBPROVIDER 1, LINE 3.01 ADJUSTMENT TO PROVIDER                            M
»   1.00 PART A MM/DD/YYYY               N/A FOR MEMO ADJUSTMENT
»   2.00 PART A AMOUNT                           0         122,825          122,825                   R

    E-1, TITLE XVIII, SUBPROVIDER 1, LINE 3.02 ADJUSTMENT TO PROVIDER                            M
»   1.00 PART A MM/DD/YYYY               N/A FOR MEMO ADJUSTMENT
»   2.00 PART A AMOUNT                           0          29,465           29,465                   R

    E-1, TITLE XVIII, SUBPROVIDER 1, LINE 5.50 TENTATIVE TO PROGRAM                             M
»   1.00 PART A MM/DD/YYYY               N/A FOR MEMO ADJUSTMENT
»   2.00 PART A AMOUNT                           0         229,086          229,086                   R

**** ADJUSTMENT NO. 55 **** REF:   27
E-1, Title XVIII, Column 2.00, - PS&R
PS&R Run Date: 02/06/2008, Payment End Date: 02/29/2008
Ref: 42CFR 412.110/413.20
CMS PUB. 15-1 Sec. 2408.4

    E-1, TITLE XVIII, SUBPROVIDER 2, LINE 1.00 INTERIM PAYMENTS PAID TO PROVIDER                R
      2.00 PART A AMOUNT                    6,050,064              26          6,050,090                R
                                           6,050,090        -169,140          5,880,950

**** ADJUSTMENT NO. 56 **** REF:   28
E-1, Title XVIII, Column 4.00, - PS&R
PS&R Run Date: 02/06/2008, Payment End Date: 02/29/2008
Ref: 42CFR 412.110/413.20
CMS PUB. 15-1 Sec. 2408.4

    E-1, TITLE XVIII, SUBPROVIDER 2, LINE 1.00 INTERIM PAYMENTS PAID TO PROVIDER                R
      4.00 PART B AMOUNT                       5,348             246              5,594

**** ADJUSTMENT NO. 57 **** REF:   57 **** WPR: PS&R
The tentative's notice of program reimbursement date of 08/01/2005 has been updated for each unit.
The psych retroactive settlements' dates of 08/18/2004 and 10/15/2004, respectively have been updated.
PS&R Run Date: 02/06/2008, Payment End Date: 02/29/2008
Ref: 42 CFR 412.110/413.20
CMS Pub. 15-1 Sec. 2408.4

    E-1, TITLE XVIII, SUBPROVIDER 2, LINE 5.01 TENTATIVE TO PROVIDER                            M
»   1.00 PART A MM/DD/YYYY               N/A FOR MEMO ADJUSTMENT
»   2.00 PART A AMOUNT                           0         162,461          162,461                   R

**** ADJUSTMENT NO. 58 **** REF:   23
E-3, Part I, Title XVIII, Column 1.00, - PS&R
PS&R Run Date: 02/06/2008, Payment End Date: 02/29/2008
Ref: 42CFR 412.110/413.20
CMS PUB. 15-1 Sec. 2408.4

    E-3, PART 1, TITLE XVIII, SUBPROVIDER 1, LINE 7.00 DEDUCTIBLES                              R
      1.00                                   77,964             876             78,840

    E-3, PART I, TITLE XVIII, SUBPROVIDER 1, LINE 9.00 COINSURANCE                              R
      1.00                                   71,613          16,863             88,476

**** ADJUSTMENT NO. 59 **** REF:   32
E-3, Part I, Title XVIII, Column 1.00, - PS&R
PS&R Run Date: 02/06/2008, Payment End Date: 02/29/2008
Ref: 42CFR 412.110/413.20
CMS PUB. 15-1 Sec. 2408.4

    E-3, PART 1, TITLE XVIII, SUBPROVIDER 2, LINE 1.02 ENTER FROM THE PS&R, THE IRF PPS PAY      R
      1.00                                5,480,844               0          5,480,844

```
DATA FILE   : C:\HFSWIN\04330300.PRO
FISCAL PERIOD: 01/01/2004 TO 12/31/2004                                    HEALTH FINANCIAL SYSTEMS
PROVIDER NAME: LUTHERAN MEDICAL CENTER                                            MCRS/PC-WIN
PROVIDER NO. : 33-0306
```

| COLUMN DESCRIPTION | PREVIOUS VALUE | DIFFERENCE | NEW VALUE | ACTION |
|---|---|---|---|---|
| **** ADJUSTMENT NO.  59  **** REF:   32 | | | | |
| E-3, PART 1, TITLE XVIII, SUBPROVIDER 2, LINE 7.00 DEDUCTIBLES | 22,776 | 0 | 22,776 | R |
| 1.00 | | | | |
| E-3, PART 1, TITLE XVIII, SUBPROVIDER 2, LINE 9.00 COINSURANCE | 15,330 | 0 | 15,330 | R |
| 1.00 | | | | |
| **** ADJUSTMENT NO.  60  **** REF:   38  **** WPR: CE-1 | | | | |
| To update SSI ratio for inpatient rehabilitation facility per the CMS listing. | | | | |
| Ref: 42 CFR 412.624; CMS Pub. 15-II, Section 3633.1 | | | | |
| E-3, PART 1, TITLE XVIII, SUBPROVIDER 2, LINE 1.03 MEDICAID SSI RATIO (IRF PPS ONLY)(SE | 0.0818 | 0.0614 | 0.1432 | R |
| 1.00 | | | | |
| **** ADJUSTMENT NO.  61  **** REF:    9 | | | | |
| E-3, Part IV, Title XVIII, Column 1.00, - PS&R | | | | |
| PS&R Run Date: 02/06/2008, Payment End Date: 02/29/2008 | | | | |
| Ref: 42CFR 412.110/413.20 | | | | |
| CMS PUB. 15-1 Sec. 2408.4 | | | | |
| E-3, PART 4, TITLE XVIII, HOSPITAL, LINE 6.02 PROGRAM MANAGED CARE DAYS OCCURING O | 9,235 | -1,049 | 8,186 | R |
| 1.00 DIRECT GME & ESRD OUTPATIENT DIR | | | | |
| ALSO SEE REF.# 20, 29 AND 55 | | | | |
| **** ADJUSTMENT NO.  62  **** REF:   20 | | | | |
| E-3, Part IV, Title XVIII, Column 1.00, - PS&R | | | | |
| PS&R Run Date: 02/06/2008, Payment End Date: 02/29/2008 | | | | |
| Ref: 42CFR 412.110/413.20 | | | | |
| CMS PUB. 15-1 Sec. 2408.4 | | | | |
| E-3, PART 4, TITLE XVIII, HOSPITAL, LINE 6.02 PROGRAM MANAGED CARE DAYS OCCURING O | 8,186 | 108 | 8,294 | A |
| 1.00 DIRECT GME & ESRD OUTPATIENT DIR | | | | |
| ALSO SEE REF.# 9, 29 AND 55 | | | | |
| **** ADJUSTMENT NO.  63  **** REF:   29 | | | | |
| E-3, Part IV, Title XVIII, Column 1.00, - PS&R | | | | |
| PS&R Run Date: 02/06/2008, Payment End Date: 02/29/2008 | | | | |
| Ref: 42CFR 412.110/413.20 | | | | |
| CMS PUB. 15-1 Sec. 2408.4 | | | | |
| E-3, PART 4, TITLE XVIII, HOSPITAL, LINE 6.02 PROGRAM MANAGED CARE DAYS OCCURING O | 8,294 | 61 | 8,355 | A |
| 1.00 DIRECT GME & ESRD OUTPATIENT DIR | | | | |
| ALSO SEE REF.# 9, 20 AND 55 | | | | |
| **** ADJUSTMENT NO.  64  **** REF:   36  **** WPR: CC-4 | | | | |
| To adjust the Direct Graduate Medical Education Intern & Resident FTE count to agree to | | | | |
| the Intermediary's data. | | | | |
| Ref: 42 CFR 413.78; CMS Pub. 15-II, Section 3633.4 | | | | |
| E-3, PART 4, TITLE XVIII, HOSPITAL, LINE 3.05 UNWEIGHTED RESIDENT FTE COUNT FOR AL | 121.40 | -0.76 | 120.64 | R |
| 1.00 DIRECT GME & ESRD OUTPATIENT DIR | | | | |
| E-3, PART 4, TITLE XVIII, HOSPITAL, LINE 3.07 WEIGHTED FTE COUNT FOR PRIMARY CARE | 102.32 | -0.75 | 101.57 | R |
| 1.00 DIRECT GME & ESRD OUTPATIENT DIR | | | | |
| E-3, PART 4, TITLE XVIII, HOSPITAL, LINE 3.11 WEIGHTED DENTAL AND PODIATRIC RESIDE | 114.55 | -1.23 | 113.32 | R |
| 1.00 DIRECT GME & ESRD OUTPATIENT DIR | | | | |
| E-3, PART 4, TITLE XVIII, HOSPITAL, LINE 3.16 ENTER THE SUM OF LINE 3.15 PLUS WEIG | 130.31 | -3.34 | 126.97 | R |
| 1.00 DIRECT GME & ESRD OUTPATIENT DIR | | | | |
| E-3, PART 4, TITLE XVIII, HOSPITAL, LINE 3.22 SEE INSTRUCTIONS | 103.99 | -2.28 | 101.71 | R |
| 1.00 DIRECT GME & ESRD OUTPATIENT DIR | | | | |
| **** ADJUSTMENT NO.  65  **** REF:   48  **** WPR: CC-4 | | | | |
| To update prior year and penultimate year FTE counts for Direct Graduate Medical Education to agree | | | | |
| with the Intermediary's data. | | | | |
| Ref: 42 CFR 413.79; CMS Pub. 15-II, Section 3633.4 | | | | |
| E-3, PART 4, TITLE XVIII, HOSPITAL, LINE 3.13 TOTAL WEIGHTED RESIDENT FTE COUNT FO | 130.60 | -1.68 | 128.92 | R |
| 1.00 DIRECT GME & ESRD OUTPATIENT DIR | | | | |
| E-3, PART 4, TITLE XVIII, HOSPITAL, LINE 3.14 TOTAL WEIGHTED RESIDENT FTE COUNT FO | 127.53 | -7.10 | 120.43 | R |
| 1.00 DIRECT GME & ESRD OUTPATIENT DIR | | | | |
| E-3, PART 4, TITLE XVIII, HOSPITAL, LINE 3.19 ENTER THE WEIGHTED FTE RESIDENT COUN | 100.14 | 0.24 | 100.38 | R |
| 1.00 DIRECT GME & ESRD OUTPATIENT DIR | | | | |
| E-3, PART 4, TITLE XVIII, HOSPITAL, LINE 3.20 ENTER THE WEIGHTED FTE RESIDENT COUN | 109.50 | -6.33 | 103.17 | R |
| 1.00 DIRECT GME & ESRD OUTPATIENT DIR | | | | |
| **** ADJUSTMENT NO.  66  **** REF:   55  **** WPR: CJ-11 | | | | |
| See adjustment explanation for adjustment reference number 51. | | | | |
| E-3, PART 4, TITLE XVIII, HOSPITAL, LINE 6.02 PROGRAM MANAGED CARE DAYS OCCURING O | 8,355 | -1 | 8,354 | A |
| 1.00 DIRECT GME & ESRD OUTPATIENT DIR | | | | |
| ALSO SEE REF.# 9, 20 AND 29 | | | | |

Case 1:13-cv-07325-FB-JMA   Document 1   Filed 12/26/13   Page 29 of 75 PageID #: 29
T-086  P.019/020  F-477

```
DATA FILE     : L:\MPSR\NTD-33U3UU.MCR
FISCAL PERIOD: 01/01/2004 TO 12/31/2004                          HEALTH FINANCIAL SYSTEMS
PROVIDER NAME: LUTHERAN MEDICAL CENTER                                      MCRS/PC-WIN
PROVIDER NO. : 33-0306
```

| COLUMN DESCRIPTION | PREVIOUS VALUE | DIFFERENCE | NEW VALUE | ACTION |
|---|---|---|---|---|

```
**** ADJUSTMENT NO.  67  **** REF:    4
L, Part I, Title XVIII, Column 1.00, - PS&R
PS&R Run Date: 02/06/2008, Payment End Date: 02/29/2008
Ref: 42CFR 412.110/413.20
CMS PUB. 15-1 Sec. 2408.4
```

| | PREVIOUS VALUE | DIFFERENCE | NEW VALUE | ACTION |
|---|---|---|---|---|
| L, PART 1, TITLE XVIII, HOSPITAL, LINE 2.00 CAPITAL DRG OTHER THAN OUTLIER | | | | R |
| 1.00 CAPITAL PAYMENT | 3,643,384 | -2,407 | 3,640,977 | |
| ALSO SEE REF.# 56 | | | | |
| L, PART 1, TITLE XVIII, HOSPITAL, LINE 3.01 CAPITAL DRG OUTLIER PAYMENTS FOR SER | | | | R |
| 1.00 CAPITAL PAYMENT | 33,707 | -1,414 | 32,293 | |

```
**** ADJUSTMENT NO.  68  **** REF:   49  **** WPR: CE-1
To adjust the Capital DSH SSI % to agree with the Intermediary's data.
Ref: 42 CFR 412.320; CMS Pub. 15-II, Sec. 3604 & 3660.1
```

| | PREVIOUS VALUE | DIFFERENCE | NEW VALUE | ACTION |
|---|---|---|---|---|
| L, PART 1, TITLE XVIII, HOSPITAL, LINE 5.00 PERCENTAGE OF SSI RECIPIENT PATIENT | | | | R |
| 1.00 CAPITAL PAYMENT | 12.75 | 2.58 | 15.33 | |

```
**** ADJUSTMENT NO.  69  **** REF:   56  **** WPR: CJ-11
See adjustment explanation for adjustment reference number 51.
```

| | PREVIOUS VALUE | DIFFERENCE | NEW VALUE | ACTION |
|---|---|---|---|---|
| L, PART 1, TITLE XVIII, HOSPITAL, LINE 2.00 CAPITAL DRG OTHER THAN OUTLIER | | | | A |
| 1.00 CAPITAL PAYMENT | 3,640,977 | 710 | 3,641,687 | |
| ALSO SEE REF.# 4 | | | | |

*P* NOTE: ADJUSTMENTS MARKED WITH "*" ARE NEW OR MODIFIED SINCE  3/28/2008.

PREPARED : 7/25/2008
FYE : 12/31/2004

PROVIDER NO. : 33-0306
PROVIDER NAME: LUTHERAN MEDICAL CENTER

SCHEDULE FOR NPR PURPOSES COMPARING INTERMEDIARY'S DETERMINATION TO THE CORRECTED INTERMEDIARY DETERMINATION AMOUNTS:
CMS-2552-96 - SETTLED W/O AUDIT SETTLEMENT

| COMPONENT | INTERMEDIARY'S DETERMINATION | | | | | | | | |
| | PART A | | | PART B | | | TOTAL | | |
| | PREVIOUS | CORRECTED | ADJUST-MENT | PREVIOUS | CORRECTED | ADJUST-MENT | PREVIOUS | CORRECTED | ADJUST-MENT |
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 |
|---|---|---|---|---|---|---|---|---|---|
| HOSPITAL | -961779 | 250987 | 1212766 | 2181281 | 482746 | -1698535 | 1219502 | 733733 | -485769 |
| SUBPROVIDER | 66243 | 24465 | -41778 | 0 | 0 | 0 | 66243 | 24465 | -41778 |
| SUBPROVIDER II | -6653 | 143894 | 150547 | 1 | 0 | -1 | -6652 | 143894 | 150546 |
| TOTAL | -902189 | 419346 | 1321535 | 2181282 | 482746 | -1698536 | 1279093 | 902092 | -377001 |

*See W/P C-3 for settlement due ±50,000
explanations (Binder C. ½)*

SCHEDULE FOR NPR PURPOSES COMPARING "AS FILED"
TO ADJUSTED AMOUNTS
*** SUBTOTAL LINES NOT PRINTED ***

```
I  33-0306         I FROM  1/ 1/2004 I  WORKSHEET E
I  COMPONENT NO:   I TO   12/31/2004 I  PART A
I       -          I       -         I
```

PART A - INPATIENT HOSPITAL SERVICES UNDER PPS
TITLE XVIII                    HOSPITAL                        PPS

| | | AS FILED | COLUMN 1 AUDITED | ADJUSTMENT | SCH/MDH COLUMN 1.01 AS FILED | AUDITED | ADJUSTMENT |
|---|---|---|---|---|---|---|---|
| .1 | OTHER THAN OUTLIER PAYMENTS OCCURING PRIOR TO OCTOBER 1 | 9,254,814 | 9,181,756 | -73,058 | | | |
| 1.01 | OTHER THAN OUTLIER PAYMENTS OCCURING ON OR AFTER OCTOBER 1 AND BEFORE JANUARY 1 | 10,944,039 | 11,082,153 | 138,114 | | | |
| 1.02 | OTHER THAN OUTLIER PAYMENTS OCCURING ON OR AFTER JANUARY 1 | | | | | | |
| | MANAGED CARE PATIENTS | | | | | | |
| 1.03 | PAYMENTS PRIOR TO OCTOBER 1 | 2,165,164 | 2,198,042 | 32,878 | | | |
| 1.04 | PAYMENTS ON OR AFTER OCTOBER 1 AND PRIOR TO JANUARY 1 | 2,395,268 | 2,415,009 | 19,741 | | | |
| 1.05 | PAYMENTS ON OR AFTER JANUARY 1. | | | | | | |
| 1.06 | ADDITIONAL AMOUNT RECEIVED OR TO BE RECEIVED (SEE INSTRUCTIONS) | | | | | | |
| 1.07 | PAYMENTS FOR DISCHARGES ON OR AFTER APRIL THROUGH SEPTEMBER 30, 2001. | 18,507,628 | 18,427,651 | -79,977 | | | |
| 1.08 | SIMULATED PAYMENTS FROM PS&R ON OR AFTER 2001 | 4,212,831 | 4,211,925 | -906 | | | |
| 2 | OUTLIER PAYMENT FOR DISCHARGES OCCURRING PRIOR TO OCTOBER 1, 1997 (SEE INSTRUCT.) | | | | | | |
| 2.01 | OUTLIER PAYMENT FOR DISCHARGES OCCURRING ON OR AFTER OCTOBER 1, 1997 (SEE INST.) | 442,016 | 428,319 | -13,697 | | | |
| 3 | INDIRECT MEDICAL EDUCATION ADJUSTMENT BED DAYS AVAILABLE DIVIDED BY NUMBER OF DAYS IN THE COST REPORTING PERIOD | 322.00 | 322.00 | | | | |
| 3.01 | NUMBER OF INTERNS & RESIDENTS | | | | | | |
| 3.02 | INDIRECT MEDICAL EDUCATION PERCENTAGE | | | | | | |
| 3.03 | INDIRECT MEDICAL EDUCATION ADJUSTMENT | | | | | | |
| 3.04 | ENTER FTE COUNT FOR ALLOPATHIC AND OSTEO PATHIC PROGRAMS FOR THE MOST RECENT COST REPORTING PERIOD ENDING ON OR BEFORE DECEMBER 31, 1996. | 119.57 | 119.57 | | | | |
| 3.05 | ENTER FTE COUNT FOR ALLOPATHIC AND OSTEO PATHIC PROGRAMS WHICH MEET THE CRITERIA FOR AN ADD-ON TO THE CAP FOR NEW PROGRAM IN ACCORDANCE WITH SECTION 1886(d)(5)(B) | | | | | | |
| 3.06 | ENTER THE ADJUSTMENT TO THE FTE COUNT FOR ALLOPATHIC AND OSTEOPATHIC PROGRAMS FOR AFFILIATED PROGRAMS IN ACCORDANCE WITH SECTION 1886(d)(5)(B)(viii) | 6.50 | 6.50 | | | | |
| 3.07 | ENTER THE SUM OF LINES 3.04 THROUGH 3.06 | 126.07 | 126.07 | | | | |
| 3.08 | ENTER FTE COUNT FOR ALLOPATHIC AND OSTEO PATHIC PROGRAMS IN THE CURRENT YEAR FROM YOUR RECORDS | 121.40 | 120.64 | -.76 | | | |
| 3.09 | FOR COST REPORTING PERIODS BEGINNING BEFORE OCTOBER 1, ENTER THE PERCENTAGE OF DISCHARGES OCCURRING PRIOR TO OCT. 1. | | | | | | |
| 3.10 | FOR COST REPORTING PERIODS BEGINNING BEFORE OCT. 1, ENTER THE PERCENTAGE OF DISCHARGES OCCURRING ON OR AFTER OCT. 1. | | | | | | |
| 3.11 | ENTER THE FTE COUNT FOR THE PERIOD IDENTIFIED IN LINE 3.09 | | | | | | |
| 3.12 | ENTER THE FTE COUNT FOR THE PERIOD IDENTIFIED IN LINE 3.10 | | | | | | |
| 3.13 | ENTER THE FTE COUNT FOR RESIDENTS IN DENTAL AND PODIATRIC PROGRAMS. | 120.34 | 120.34 | | | | |
| 3.14 | CURRENT YEAR ALLOWABLE FTE (SEE INSTR.) | 241.74 | 240.98 | -.76 | | | |
| 3.15 | ENTER THE TOTAL ALLOWABLE FTE COUNT FOR THE PRIOR YEAR. | 239.46 | 239.34 | -.12 | | | |
| 3.16 | ENTER THE TOTAL ALLOWABLE FTE COUNT FOR THE PENULTIMATE YEAR IF THAT YEAR ENDED ON OR AFTER SEPTEMBER 30, 1997, OTHERWISE ENTER ZERO. | 242.75 | 242.69 | -.06 | | | |
| 3.17 | ENTER THE SUM OF LINES 3.14 THROUGH 3.16 DIVIDED BY 3 OR DIVIDED BY 2 IF LINE 3.16 IS ZERO. | 241.32 | 241.00 | -.32 | | | |
| 3.18 | ENTER THE CURRENT YEAR RESIDENT TO BED RATIO. (SEE INSTRUCTIONS) | .749441 | .748447 | -.000994 | | | |
| 3.19 | ENTER THE PRIOR YEAR RESIDENT TO BED RATIO. | .762611 | .762229 | -.000382 | | | |
| 3.20 | FOR COST REPORTING PERIODS BEGINNING ON OR AFTER OCTOBER 1, 1997, ENTER THE LESSER OF LINES 3.18 OR 3.19 | .749441 | .748447 | -.000994 | | | |
| 3.21 | IME PAYMENTS FOR DISCHARGES OCCURRING PRIOR TO OCTOBER 1 (SEE INSTRUCTIONS) | 3,919,314 | 3,901,109 | -18,205 | | | |
| 3.22 | IME PAYMENTS FOR DISCHARGES OCCURRING ON OR AFTER OCTOBER 1 BUT BEFORE JANUARY 1 (SEE INSTRUCTIONS) | 4,815,410 | 4,866,874 | 51,464 | | | |
| 3.23 | IME PAYMENTS FOR DISCHARGES OCCURRING ON OR AFTER JANUARY 1 (SEE INSTRUCTIONS) | | | | | | |
| 3.24 | ENTER THE SUM OF LINES 3.21 THROUGH 3.23. | 17,225,473 | 17,218,929 | -6,544 | | | |
| 4 | DISPROPORTIONATE SHARE ADJUSTMENT PERCENTAGE OF SSI RECEIPIENT PATIENT DAYS TO MEDICARE PART A PATIENT DAYS. | 12.75 | 15.33 | 2.58 | | | |
| 4.01 | PERCENTAGE OF MEDICAID PATIENT DAYS TO TOTAL DAYS REPORTED ON WORKSHEET S-3, | 37.14 | 37.14 | | | | |
| 4.02 | PART 2 SUM OF LINES 4 AND 4.01 | 49.89 | 52.47 | 2.58 | | | |
| 4.03 | ALLOWABLE DISPROPORTIONATE SHARE PERCENTAGE (SEE INSTRUCTIONS) | 30.37 | 32.50 | 2.13 | | | |
| 4.04 | DISPROPORTIONATE SHARE ADJUSTMENT (SUM OF LINES 1, 1.01, 1.02, AND 2 TIMES LINE 4.03) | 11,755,159 | 12,574,758 | 819,599 | | | |

ADDITIONAL PAYMENT FOR HIGH PERCENTAGE OF ESRD BENEFICIARY DISCHARGES

```
        SCHEDULE FOR NPR PURPOSES COMPARING "AS FILED"        I   33-0306        I FROM  1/ 1/2004  I   WORKSHEET  E
        TO ADJUSTED AMOUNTS                                   I   COMPONENT NO:  I TO   12/31/2004  I   PART A
        ***  SUBTOTAL LINES NOT PRINTED   ***                 I       -         I              I
```

PART A - INPATIENT HOSPITAL SERVICES UNDER PPS       HOSPITAL              PPS
                TITLE XVIII

|  |  | COLUMN 1 | | | | SCH/MDH COLUMN 1.01 | |
|---|---|---|---|---|---|---|---|---|
|  |  | AS FILED | AUDITED | ADJUSTMENT | | AS FILED | AUDITED | ADJUSTMENT |
| 5 | TOTAL MEDICARE DISCHARGES ON WORKSHEET S-3, PART I EXCLUDING DISCHARGES FOR DRGS 302, 316, AND 317. |  |  |  |  |  |  |  |
| 5.01 | TOTAL ESRD MEDICARE DISCHARGES EXCLUDING DRGS 302, 316, AND 317. |  |  |  |  |  |  |  |
| 5.02 | DIVIDE LINE 5.01 BY LINE 5 (IF LESS THAN 10%, YOU DO NOT QUALIFY FOR ADJUSTMENT) |  |  |  |  |  |  |  |
| 5.03 | TOTAL MEDICARE ESRD INPATIENT DAYS EXCLUDING DRGS 302, 316, AND 317. |  |  |  |  |  |  |  |
| 5.04 | RATIO OF AVERAGE LENGTH OF STAY TO ONE WEEK. |  |  |  |  |  |  |  |
| 5.05 | AVERAGE WEEKLY COST FOR DIALYSIS TREATMENTS (SEE INSTRUCTIONS) | 335.00 | 335.00 |  |  |  |  |  |
| 5.06 | TOTAL ADDITIONAL PAYMENT |  |  |  |  |  |  |  |
| 6 | SUBTOTAL | 68,129,129 | 68,913,566 | 784,437 |  |  |  |  |
| 7 | HOSPITAL SPECIFIC PAYMENTS (TO BE COMPLETED BY SCH AND MDH, SMALL RURAL HOSPITALS ONLY) |  |  |  |  |  |  |  |
| 7.01 | HOSPITAL SPECIFIC PAYMENTS (1996 HSR) |  |  |  |  |  |  |  |
| 8 | TOTAL PAYMENT FOR INPATIENT OPERATING COSTS (FOR SCH AND MDH, SMALL RURAL HOSPITALS, HIGHER OF LINES 6 OR 7, ALL OTHER PROVIDERS, ENTER AMOUNT FROM LINE 6 ON THIS LINE). | 68,129,129 | 68,913,566 | 784,437 |  |  |  |  |
| 9 | PAYMENT FOR INPATIENT PROGRAM CAPITAL | 5,128,615 | 5,144,129 | 15,514 |  |  |  |  |
| 10 | EXCEPTION PAYMENT FOR INPATIENT PROGRAM CAPITAL. |  |  |  |  |  |  |  |
| 11 | DIRECT GRADUATE MEDICAL EDUCAT. PAYMENT | 9,324,054 | 8,460,524 | -863,530 |  |  |  |  |
| 11.01 | NURSING AND ALLIED HEALTH MANAGED CARE |  |  |  |  |  |  |  |
| 11.02 | SPECIAL ADD-ON PAYMENTS FOR NEW TECHNOLOG |  |  |  |  |  |  |  |
| 12 | NET ORGAN ACQUISITION COST |  |  |  |  |  |  |  |
| 13 | COST OF TEACHING PHYSICIANS |  |  |  |  |  |  |  |
| 14 | ROUTINE SERVICE OTHER PASS THROUGH COSTS |  |  |  |  |  |  |  |
| 15 | ANCILLARY SERV. OTHER PASS THROUGH COSTS |  |  |  |  |  |  |  |
| 16 | TOTAL | 82,581,798 | 82,518,219 | -63,579 |  |  |  |  |
| 17 | PRIMARY PAYER PAYMENTS | 39,824 | 39,824 |  |  |  |  |  |
| 18 | TOTAL AMOUNT PAYABLE FOR PROGRAM BENEFICIARIES. | 82,541,974 | 82,478,395 | -63,579 |  |  |  |  |
| 19 | DEDUCTIBLES BILLED TO PROGRAM BENEFICIARIES. | 2,608,548 | 2,612,016 | 3,468 |  |  |  |  |
| 20 | COINSURANCE BILLED TO PROGRAM BENEFICIARIES. | 539,703 | 541,017 | 1,314 |  |  |  |  |
| 21 | REIMBURSABLE BAD DEBTS | 135,282 | 104,275 | -31,007 |  |  |  |  |
| 21.01 | REIMBURSABLE BAD DEBTS ADJUSTMENT (SEE INSTRUCTIONS) | 94,697 | 72,993 | -21,704 |  |  |  |  |
| 21.02 | REIMBURSABLE BAD DEBTS FOR DUAL ELIGIBLE BENEFICIARIES (SEE INSTRUCTIONS) |  |  |  |  |  |  |  |
| 22 | SUBTOTAL | 79,488,420 | 79,398,355 | -90,065 |  |  |  |  |
| 23 | RECOVERY OF EXCESS DEPRECIATION RESULTING FROM PROVIDER TERMINATION OR A DECREASE IN PROGRAM UTILIZATION. |  |  |  |  |  |  |  |
| 24 | OTHER ADJUSTMENTS (SPECIFY) |  |  |  |  |  |  |  |
| 24.99 | OTHER ADJUSTMENTS (SPECIFY) |  |  |  |  |  |  |  |
| 25 | AMOUNTS APPLICABLE TO PRIOR COST REPORTING PERIODS RESULTING FROM DISPOSITION OF DEPRECIABLE ASSETS. |  |  |  |  |  |  |  |
| 26 | AMOUNT DUE PROVIDER | 79,488,420 | 79,398,355 | -90,065 |  |  |  |  |
| 27 | SEQUESTRATION ADJUSTMENT |  |  |  |  |  |  |  |
| 28 | INTERIM PAYMENTS | 80,450,199 | 78,506,509 | -1,943,690 |  |  |  |  |
| 28.01 | TENTATIVE OF SETTLEMENT |  | 640,859 | 640,859 |  |  |  |  |
| 29 | BALANCE DUE PROVIDER (PROGRAM) | -961,779 | 250,987 | 1,212,766 |  |  |  |  |
| 30 | PROTESTED AMOUNTS (NONALLOWABLE COST REPORT ITEMS) IN ACCORDANCE WITH CMS PUB. 15-II, SECTION 115.2. |  |  |  |  |  |  |  |

Case 1:13-cv-07325-FB-JMA   Document 1   Filed 12/26/13   Page 33 of 75 PageID #: 33

SCHEDULE FOR NPR PURPOSES COMPARING "AS FILED"
TO ADJUSTED AMOUNTS
*** SUBTOTAL LINES NOT PRINTED ***

33-0306
COMPONENT NO:
-

FROM 1/ 1/2004
TO 12/31/2004

WORKSHEET E
PART B

PART B - MEDICAL AND OTHER HEALTH SERVICES          HOSPITAL

| | DESCRIPTION | AS FILED | AUDITED | ADJUSTMENT |
|---|---|---|---|---|
| 1 | MEDICAL AND OTHER SERVICES (SEE INSTRUCTIONS) | 531,354 | 770,763 | 239,409 |
| 1.01 | MEDICAL AND OTHER SERVICES ON OR AFTER 4/1/2001 FROM WORKSHEET D, PART V, COLUMN 9.01, LINE 104. | 11,828,095 | 14,479,655 | 2,651,560 |
| 1.02 | PPS PAYMENT RECEIVED INCLUDING OUTLIERS. | 8,814,136 | 9,615,657 | 801,521 |
| 1.03 | ENTER THE HOSPITAL SPECIFIC PAYMENT TO COST RATIO. | .804 | .804 | |
| 1.04 | LINE 1.01 TIMES LINE 1.03. | 9,509,788 | 11,641,643 | 2,131,855 |
| 1.05 | LINE 1.02 DIVIDED BY LINE 1.04. | 92.68 | 82.60 | -10.08 |
| 1.06 | TRANSITIONAL CORRIDOR PAYMENT (SEE INSTRUCTIONS). | | | |
| 1.07 | ENTER THE AMOUNT FROM WORKSHEET D, PART IV, COLUMN 9, LINE 101. | | | |
| 2 | INTERNS AND RESIDENTS | | | |
| 3 | ORGAN ACQUISITIONS | | | |
| 4 | COST OF TEACHING PHYSICIANS | | | |
| 5 | TOTAL COST | 531,354 | 770,763 | 239,409 |
| | COMPUTATION OF LESSER OF COST OR CHARGES | | | |
| | REASONABLE CHARGES | | | |
| 6 | ANCILLARY SERVICE CHARGES | 826,229 | 1,178,278 | 352,049 |
| 7 | INTERNS AND RESIDENTS SERVICE CHARGES | | | |
| 8 | ORGAN ACQUISITION CHARGES | | | |
| 9 | CHARGES OF PROFESSIONAL SERVICES OF TEACHING PHYSICIANS. | | | |
| 10 | TOTAL REASONABLE CHARGES | 826,229 | 1,178,278 | 352,049 |
| | CUSTOMARY CHARGES | | | |
| 11 | AGGREGATE AMOUNT ACUTALLY COLLECTED FROM PATIENTS LIABLE FOR PAYMENT FOR SERVICES ON A CHARGE BASIS | | | |
| 12 | AMOUNTS THAT WOULD HAVE BEEN REALIZED FROM PATIENTS LIABLE FOR PAYMENT FOR SERVICES ON A CHARGE BASIS HAD SUCH PAYMENT BEEN MADE IN ACCORDANCE WITH 42 CRF 413.13(e). | | | |
| 13 | RATIO OF LINE 11 TO LINE 12 | | | |
| 14 | TOTAL CUSTOMARY CHARGES | 826,229 | 1,178,278 | 352,049 |
| 15 | EXCESS OF CUSTOMARY CHARGES OVER REASONABLE COST | 294,875 | 407,515 | 112,640 |
| 16 | EXCESS OF REASONABLE COST OVER CUSTOMARY CHARGES | | | |
| 17 | LESSER OF COST OR CHARGES | 531,354 | 770,763 | 239,409 |
| | COMPUTATION OF REIMBURSEMENT SETTLEMENT | | | |
| 17.01 | | 8,814,136 | 9,615,657 | 801,521 |
| 18 | DEDUCTIBLES AND COINSURANCE | 143,555 | 202,651 | 59,096 |
| 18.01 | | | | |
| 20 | SUM OF AMOUNTS FROM WORKSHEET E PARTS C, D & E, LINE 21. | 2,509,955 | 2,696,370 | 186,415 |
| 21 | DIRECT GRADUATE MEDICAL EDUCATION PAYMENTS | 2,131,458 | 2,417,485 | 286,027 |
| 22 | ESRD DIRECT MEDICAL EDUCATION COSTS | 406 | 220 | -186 |
| 24 | PRIMARY PAYER PAYMENTS | | | |
| | REIMBURSABLE BAD DEBTS (EXCLUDE BAD DEBTS FOR PROFESSIONAL SERVICES) | | | |
| 26 | COMPOSITE RATE ESRD | | | |
| 27 | BAD DEBTS (SEE INSTRUCTIONS) | 73,332 | 60,959 | -12,373 |
| 27.01 | REIMBURSABLE BAD DEBTS ADJUSTMENT | 51,332 | 42,671 | -8,661 |
| 27.02 | REIMBURSABLE BAD DEBTS FOR DUAL ELIGIBLE BENEFICIARIES (SEE INSTRUCTIONS) | | | |
| 29 | RECOVERY OF EXCESS DEPRECIATION RESULTING FROM PROVIDER TERMINATION OR A DECREASE IN PROGRAM UTILIZATION. | | | |
| 30 | OTHER ADJUSTMENTS (SPECIFY) | | -2 | -2 |
| 30.99 | OTHER ADJUSTMENTS (SPECIFY) | | | |
| 31 | AMOUNTS APPLICABLE TO PRIOR COST REPORTING PERIODS RESULTING FROM DISPOSITION OF DEPRECIABLE ASSETS. | | | |
| 32 | SUBTOTAL | 8,874,364 | 9,947,333 | 1,072,969 |
| 33 | SEQUESTRATION ADJUSTMENT (SEE INSTRUCTIONS) | | | |
| 34 | INTERIM PAYMENTS | 6,693,083 | 9,391,827 | 2,698,744 |
| 34.01 | TENTATIVE OF SETTLEMENT | | 72,760 | 72,760 |
| 35 | BALANCE DUE PROVIDER/PROGRAM | 2,181,281 | 482,746 | -1,698,535 |
| 36 | PROTESTED AMOUNTS (NONALLOWABLE COST REPORT ITEMS) IN ACCORDANCE WITH CMS PUB. 15-II, SECTION 115.2. | | | |

SCHEDULE FOR NPR PURPOSES COMPARING "AS FILED"
TO ADJUSTED AMOUNTS
    ***  SUBTOTAL LINES NOT PRINTED  ***

| | | 33-5506 | | | | |
| COMPONENT NO: | | 33-5506 | FROM 1/ 1/2004 | | | PART B |
| | | | TO 12/31/2004 | | | |

PART B - MEDICAL AND OTHER HEALTH SERVICES       SUBPROVIDER 1

| | DESCRIPTION | AS FILED | AUDITED | ADJUSTMENT |
|---|---|---|---|---|
| 1 | MEDICAL AND OTHER SERVICES (SEE INSTRUCTIONS) | | | |
| 1.01 | MEDICAL AND OTHER SERVICES ON OR AFTER 4/1/2001 | 1,754 | 1,754 | |
| | FROM WORKSHEET D, PART V, COLUMN 9.01, LINE 104. | | | |
| 1.02 | PPS PAYMENT RECEIVED INCLUDING OUTLIERS. | 3,817 | 3,817 | |
| 1.03 | ENTER THE HOSPITAL SPECIFIC PAYMENT TO COST RATIO. | .804 | .804 | |
| 1.04 | LINE 1.01 TIMES LINE 1.03. | 1,410 | 1,410 | |
| 1.05 | LINE 1.02 DIVIDED BY LINE 1.04. | | | |
| 1.06 | TRANSITIONAL CORRIDOR PAYMENT (SEE INSTRUCTIONS). | | | |
| 1.07 | ENTER THE AMOUNT FROM WORKSHEET D, PART IV, | | | |
| | COLUMN 9, LINE 101. | | | |
| 2 | INTERNS AND RESIDENTS | | | |
| 3 | ORGAN ACQUISITIONS | | | |
| 4 | COST OF TEACHING PHYSICIANS | | | |
| 5 | TOTAL COST | | | |
| | | | | |
| | COMPUTATION OF LESSER OF COST OR CHARGES | | | |
| | | | | |
| | REASONABLE CHARGES | | | |
| 6 | ANCILLARY SERVICE CHARGES | | | |
| 7 | INTERNS AND RESIDENTS SERVICE CHARGES | | | |
| 8 | ORGAN ACQUISITION CHARGES | | | |
| 9 | CHARGES OF PROFESSIONAL SERVICES OF TEACHING | | | |
| | PHYSICIANS. | | | |
| 10 | TOTAL REASONABLE CHARGES | | | |
| | | | | |
| | CUSTOMARY CHARGES | | | |
| 11 | AGGREGATE AMOUNT ACUTALLY COLLECTED FROM PATIENTS | | | |
| | LIABLE FOR PAYMENT FOR SERVICES ON A CHARGE BASIS | | | |
| 12 | AMOUNTS THAT WOULD HAVE BEEN REALIZED FROM | | | |
| | PATIENTS LIABLE FOR PAYMENT FOR SERVICES ON A | | | |
| | CHARGE BASIS HAD SUCH PAYMENT BEEN MADE IN | | | |
| | ACCORDANCE WITH 42 CRF 413.13(e). | | | |
| 13 | RATIO OF LINE 11 TO LINE 12 | | | |
| 14 | TOTAL CUSTOMARY CHARGES | | | |
| 15 | EXCESS OF CUSTOMARY CHARGES OVER REASONABLE COST | | | |
| 16 | EXCESS OF REASONABLE COST OVER CUSTOMARY CHARGES | | | |
| 17 | LESSER OF COST OR CHARGES | | | |
| | | | | |
| | COMPUTATION OF REIMBURSEMENT SETTLEMENT | 3,817 | 3,817 | |
| 17.01 | | | | |
| 18 | DEDUCTIBLES AND COINSURANCE | 1,872 | 1,872 | |
| 18.01 | | | | |
| 20 | SUM OF AMOUNTS FROM WORKSHEET E PARTS C, D & E, | | | |
| | LINE 21. | | | |
| 21 | DIRECT GRADUATE MEDICAL EDUCATION PAYMENTS | | | |
| 22 | ESRD DIRECT MEDICAL EDUCATION COSTS | | | |
| 24 | PRIMARY PAYER PAYMENTS | | | |
| | | | | |
| | REIMBURSABLE BAD DEBTS (EXCLUDE BAD DEBTS FOR PROFESSIONAL SERVICES) | | | |
| 26 | COMPOSITE RATE ESRD | | | |
| 27 | BAD DEBTS (SEE INSTRUCTIONS) | | | |
| 27.01 | REIMBURSABLE BAD DEBTS ADJUSTMENT | | | |
| 27.02 | REIMBURSABLE BAD DEBTS FOR DUAL ELIGIBLE | | | |
| | BENEFICIARIES (SEE INSTRUCTIONS) | | | |
| 29 | RECOVERY OF EXCESS DEPRECIATION RESULTING FROM | | | |
| | PROVIDER TERMINATION OR A DECREASE IN PROGRAM | | | |
| | UTILIZATION. | | | |
| 30 | OTHER ADJUSTMENTS (SPECIFY) | | | |
| 30.99 | OTHER ADJUSTMENTS (SPECIFY) | | | |
| 31 | AMOUNTS APPLICABLE TO PRIOR COST REPORTING PERIODS | | | |
| | RESULTING FROM DISPOSITION OF DEPRECIABLE ASSETS. | | | |
| 32 | SUBTOTAL | 1,945 | 1,945 | |
| 33 | SEQUESTRATION ADJUSTMENT (SEE INSTRUCTIONS) | | | |
| 34 | INTERIM PAYMENTS | 1,945 | 1,945 | |
| 34.01 | TENTATIVE OF SETTLEMENT | | | |
| 35 | BALANCE DUE PROVIDER/PROGRAM | | | |
| 36 | PROTESTED AMOUNTS (NONALLOWABLE COST REPORT ITEMS) | | | |
| | IN ACCORDANCE WITH CMS PUB. 15-II, SECTION 115.2. | | | |

SCHEDULE FOR NPR PURPOSES COMPARING "AS FILED"
TO ADJUSTED AMOUNTS
*** SUBTOTAL LINES NOT PRINTED ***

| | | | |
|---|---|---|---|
| 33-U300 | | FROM 1/ 1/2004 | WORKSHEET E |
| COMPONENT NO: | | TO 12/31/2004 | PART B |
| 33-T306 | | | |

PART B - MEDICAL AND OTHER HEALTH SERVICES        SUBPROVIDER 2

| | DESCRIPTION | AS FILED | AUDITED | ADJUSTMENT |
|---|---|---|---|---|
| 1 | MEDICAL AND OTHER SERVICES (SEE INSTRUCTIONS) | | | |
| 1.01 | MEDICAL AND OTHER SERVICES ON OR AFTER 4/1/2001 | 4,191 | 4,453 | 262 |
| 1.02 | FROM WORKSHEET D, PART V, COLUMN 9.01, LINE 104. | 9,615 | 10,062 | 447 |
| 1.03 | PPS PAYMENT RECEIVED INCLUDING OUTLIERS. | .804 | .804 | |
| 1.04 | ENTER THE HOSPITAL SPECIFIC PAYMENT TO COST RATIO. | 3,370 | 3,380 | 210 |
| 1.05 | LINE 1.01 TIMES LINE 1.03. | | | |
| 1.06 | LINE 1.02 DIVIDED BY LINE 1.04. | | | |
| 1.07 | TRANSITIONAL CORRIDOR PAYMENT (SEE INSTRUCTIONS). | | | |
| | ENTER THE AMOUNT FROM WORKSHEET D, PART IV, | | | |
| | COLUMN 9, LINE 101. | | | |
| 2 | INTERNS AND RESIDENTS | | | |
| 3 | ORGAN ACQUISITIONS | | | |
| 4 | COST OF TEACHING PHYSICIANS | | | |
| 5 | TOTAL COST | | | |
| | COMPUTATION OF LESSER OF COST OR CHARGES | | | |
| | REASONABLE CHARGES | | | |
| 6 | ANCILLARY SERVICE CHARGES | | | |
| 7 | INTERNS AND RESIDENTS SERVICE CHARGES | | | |
| 8 | ORGAN ACQUISITION CHARGES | | | |
| 9 | CHARGES OF PROFESSIONAL SERVICES OF TEACHING | | | |
| | PHYSICIANS. | | | |
| 10 | TOTAL REASONABLE CHARGES | | | |
| | CUSTOMARY CHARGES | | | |
| 11 | AGGREGATE AMOUNT ACUTALLY COLLECTED FROM PATIENTS | | | |
| | LIABLE FOR PAYMENT FOR SERVICES ON A CHARGE BASIS | | | |
| 12 | AMOUNTS THAT WOULD HAVE BEEN REALIZED FROM | | | |
| | PATIENTS LIABLE FOR PAYMENT FOR SERVICES ON A | | | |
| | CHARGE BASIS HAD SUCH PAYMENT BEEN MADE IN | | | |
| | ACCORDANCE WITH 42 CRF 413.13(e). | | | |
| 13 | RATIO OF LINE 11 TO LINE 12 | | | |
| 14 | TOTAL CUSTOMARY CHARGES | | | |
| 15 | EXCESS OF CUSTOMARY CHARGES OVER REASONABLE COST | | | |
| 16 | EXCESS OF REASONABLE COST OVER CUSTOMARY CHARGES | | | |
| 17 | LESSER OF COST OR CHARGES | | | |
| 17.01 | COMPUTATION OF REIMBURSEMENT SETTLEMENT | 9,615 | 10,062 | 447 |
| 18 | DEDUCTIBLES AND COINSURANCE | 4,266 | 4,468 | 202 |
| 18.01 | | | | |
| 20 | SUM OF AMOUNTS FROM WORKSHEET E PARTS C, D & E, | | | |
| | LINE 21. | | | |
| 21 | DIRECT GRADUATE MEDICAL EDUCATION PAYMENTS | | | |
| 22 | ESRD DIRECT MEDICAL EDUCATION COSTS | | | |
| 24 | PRIMARY PAYER PAYMENTS | | | |
| | REIMBURSABLE BAD DEBTS (EXCLUDE BAD DEBTS FOR PROFESSIONAL SERVICES) | | | |
| 26 | COMPOSITE RATE ESRD | | | |
| 27 | BAD DEBTS (SEE INSTRUCTIONS) | | | |
| 27.01 | REIMBURSABLE BAD DEBTS ADJUSTMENT | | | |
| 27.02 | REIMBURSABLE BAD DEBTS FOR DUAL ELIGIBLE | | | |
| | BENEFICIARIES (SEE INSTRUCTIONS) | | | |
| 29 | RECOVERY OF EXCESS DEPRECIATION RESULTING FROM | | | |
| | PROVIDER TERMINATION OR A DECREASE IN PROGRAM | | | |
| | UTILIZATION. | | | |
| 30 | OTHER ADJUSTMENTS (SPECIFY) | | | |
| 30.99 | OTHER ADJUSTMENTS (SPECIFY) | | | |
| 31 | AMOUNTS APPLICABLE TO PRIOR COST REPORTING PERIODS | | | |
| | RESULTING FROM DISPOSITION OF DEPRECIABLE ASSETS. | | | |
| 32 | SUBTOTAL | 5,349 | 5,594 | 245 |
| 33 | SEQUESTRATION ADJUSTMENT (SEE INSTRUCTIONS) | 5,348 | 5,594 | 246 |
| 34 | INTERIM PAYMENTS | | | |
| 34.01 | TENTATIVE OF SETTLEMENT | | | |
| 35 | BALANCE DUE PROVIDER/PROGRAM | 1 | | -1 |
| 36 | PROTESTED AMOUNTS (NONALLOWABLE COST REPORT ITEMS) | | | |
| | IN ACCORDANCE WITH CMS PUB. 15-II, SECTION 115.2. | | | |

DEC-16-2008 07:59PM  FROM-

SCHEDULE FOR NPR PURPOSES COMPARING "AS FILED"
TO ADJUSTED AMOUNTS
  ***  SUBTOTAL LINES NOT PRINTED  ***

PART I - MEDICARE PART A SERVICES - TEFRA
                                   SUBPROVIDER 1

| | DESCRIPTION | AS FILED | AUDITED | ADJUSTMENT |
|---|---|---|---|---|
| 1 | INPATIENT HOSPITAL SERVICES | 1,978,326 | 1,896,283 | -82,043 |
| 1.01 | HOSPITAL SPECIFIC AMOUNT | | | |
| 1.02 | ENTER FROM THE PS&R, THE IRF PPS PAYMENT | | | |
| 1.03 | MEDICAID SSI RATIO (IRF PPS ONLY) | | | |
| 1.04 | INPATIENT REHABILITATION FACILITY LIP PAYMENT | | | |
| 1.05 | OUTLIER PAYMENTS | | | |
| 1.06 | TOTAL PPS PAYMENTS | | | |
| 1.07 | ENTER THE AMOUNT OF NURSING & ALLIED HEALTH MANAGED CARE PAYMENTS IF APPLICABLE | | | |
| 1.08 | NET FEDERAL IPF PPS PAYMENTS (EXCLUDING OUTLIER, ECT, STOP-LOSS, AND MEDICAL EDUCATION PAYMENTS) | | | |
| 1.09 | NET IPF PPS OUTLIER PAYMENTS | | | |
| 1.10 | NET IPF PPS ECY PAYMENTS | | | |
| 1.11 | UNWEIGHTED INTERN AND RESIDENT FTE COUNT FOR LATEST CONST REPORT FILED PRIOR TO NOVEMBER 15, 2004 (SEE INSTRUCTIONS) | | | |
| 1.12 | NEW TEACHING PROGRAM ADJUSTMENT. | | | |
| 1.13 | CURRENT YEAR'S UNWEIGHTED FTE COUNT OF I&R OTHER THAN FTE'S IN THE FIRST 3 YEARS OF A "NEW TEACHING PROGRAM". (SEE INSTRUCTIONS) | | | |
| 1.14 | CURRENT YEAR'S UNWEIGHTED I&R FTE COUNT FOR RESIDENTS WITHIN THE FIRST 3 YEARS OF A "NEW TEACHING PROGRAM". (SEE INSTRUCTIONS) | | | |
| 1.15 | INTERN AND RESIDENT COUNT FOR IPF PPS MEDICAL EDUCATION ADJUSTMENT (SEE INSTRUCTIONS) | | | |
| 1.16 | AVERAGE DAILY CENSUS (SEE INSTRUCTIONS) | | | |
| 1.17 | MEDICAL EDUCATION ADJUSTMENT FACTOR | | | |
| 1.18 | MEDICAL EDUCATION ADJUSTMENT | | | |
| 1.19 | ADJUSTMENT NET IPF PPS PAYMENTS | | | |
| 1.20 | STOP LOSS PAYMENT FLOOR | | | |
| 1.21 | ADJUSTMENT NET PAYMENT FLOOR | | | |
| 1.22 | STOP LOSS ADJUSTMENT | | | |
| 1.23 | TOTAL IPF PPS PAYMENTS | | | |
| 1.35 | UNWEIGHTED INTERN AND RESIDENT FTE COUNT FOR COST REPORT PERIODS ENDING ON/OR PRIOR TO 11/15/2004 | | | |
| 1.36 | NEW TEACHING PROGRAM ADJUSTMENT (SEE INSTRUCT) | | | |
| 1.37 | CURRENT YEAR'S UNWEIGHTED FTE COUNT OF I&R OTHER THAN FTES IN 1ST 3 YRS OF A "NEW TEACHING PROG" | | | |
| 1.38 | CURRENT YEAR'S UNWEIGHTED I&R FTE COUNT FOR RESIDENTS WITHIN THE 1ST 3 YRS OF "NEW TEACHING PROGRAM". (SEE INST.) | | | |
| 1.39 | INTERN & RESIDENT COUNT FOR IRF PPS MEDICAL EDUCATION ADJUSTMENT (SEE INSTRUCTIONS) | | | |
| 1.40 | AVERAGE DAILY CENSUS (SEE INSTRUCTIONS) | | | |
| 1.41 | MEDICAL EDUCATION ADJUSTMENT FACTOR  ((C1 + (LN 1.39/LN 1.40)) RAISED TO POWER OF .9012 - 1). | | | |
| 1.42 | MEDICAL EDUCATION ADJUSTMENT (LINE 1.02 MULTIPLIED BY LINE 1.41). | | | |
| 2 | ORGAN ACQUISITION | | | |
| 3 | COST OF TEACHING PHYSICIANS | | | |
| 5 | PRIMARY PAYER PAYMENTS | 77,964 | 78,840 | 876 |
| 7 | DEDUCTIBLES | 71,613 | 88,476 | 16,863 |
| 9 | COINSURANCE | | | |
| 11 | REIMBURSABLE BAD DEBTS  (EXCLUDE BAD DEBTS FOR PHYSICIAN PROFESSIONAL SERVICES) (SEE INSTRUCTIONS) | | | |
| 11.01 | REIMBURSABLE BAD DEBTS ADJUSTMENT (SEE INSTRUCTIONS) | | | |
| 11.02 | REIMBURSABLE BAD DEBTS FOR DUAL ELIGIBLE BENEFICIARIES (SEE INSTRUCTIONS) | | | |
| 13 | DIRECT GRADUATE MEDICAL EDUCATION PAYMENTS (FROM WORKSHEET E-3, PART IV, LINE 24) | | | |
| 13.01 | OTHER PASS THROUGH COSTS (SEE INSTRUCTIONS) | | | |
| 14 | RECOVERY OF EXCESS DEPRECIATION RESULTING FROM PROVIDER TERMINATION OR A DECREASE IN PROGRAM UTILIZATION | | | |
| 15 | OTHER ADJUSTMENTS (SPECIFY) | | | |
| 15.99 | OTHER ADJUSTMENTS (SPECIFY) | | | |
| 16 | AMOUNTS APPLICABLE TO PRIOR COST REPORTING PERIODS RESULTING FROM DISPOSITION OF DEPRECIABLE ASSETS | | | |
| 17 | TOTAL AMOUNT PAYABLE TO THE PROVIDER | 1,828,749 | 1,728,967 | -99,782 |
| 18 | SEQUESTRATION ADJUSTMENT (SEE INSTRUCTIONS) | | | |
| 19 | INTERIM PAYMENTS | 1,762,506 | 1,933,588 | 171,082 |
| 19.01 | TENTATIVE SETTLEMENT | | -229,086 | -229,086 |
| 20 | BALANCE DUE PROVIDER/PROGRAM | 66,243 | 24,465 | -41,778 |
| 21 | PROTESTED AMOUNTS (NONALLOWABLE COST REPORT ITEMS) IN ACCORDANCE WITH CMS PUB. 15-II, SECTION 115.2. | | | |

```
          SCHEDULE FOR NPR PURPOSES COMPARING "AS FILED"      I    33-USUU       I FRUM  1/ 1/2004  I   SUPPLEMENTAL
          TO ADJUSTED AMOUNTS                                 I    COMPONENT NO:  I TO  12/31/2004  I   WORKSHEET E-3
          ***  SUBTOTAL LINES NOT PRINTED   ***               I    33-Y306       I                I   PART I
                                                              I                  I                I
```

PART I - MEDICARE PART A SERVICES - TEFRA          SUBPROVIDER 2

| | DESCRIPTION | AS FILED | AUDITED | ADJUSTMENT |
|---|---|---|---|---|
| 1 | INPATIENT HOSPITAL SERVICES | | | |
| 1.01 | HOSPITAL SPECIFIC AMOUNT | 5,480,844 | 5,480,844 | |
| 1.02 | ENTER FROM THE PS&R, THE IRF PPS PAYMENT | .0818 | .1432 | .0614 |
| 1.03 | MEDICAID SSI RATIO (IRF PPS ONLY) | 600,673 | 744,567 | 143,894 |
| 1.04 | INPATIENT REHABILITATION FACILITY LIP PAYMENT | | | |
| 1.05 | OUTLIER PAYMENTS | | | |
| 1.06 | TOTAL PPS PAYMENTS | 6,081,517 | 6,225,411 | 143,894 |
| 1.07 | ENTER THE AMOUNT OF NURSING & ALLIED HEALTH MANAGED CARE PAYMENTS IF APPLICABLE | | | |
| 1.08 | NET FEDERAL IPF PPS PAYMENTS (EXCLUDING OUTLIER, ECT, STOP-LOSS, AND MEDICAL EDUCATION PAYMENTS) | | | |
| 1.09 | NET IPF PPS OUTLIER PAYMENTS | | | |
| 1.10 | NET IPF PPS ECT PAYMENTS | | | |
| 1.11 | UNWEIGHTED INTERN AND RESIDENT FTE COUNT FOR LATEST CONST REPORT FILED PRIOR TO NOVEMBER 15, 2004 (SEE INSTRUCTIONS) | | | |
| 1.12 | NEW TEACHING PROGRAM ADJUSTMENT. | | | |
| 1.13 | CURRENT YEAR'S UNWEIGHTED FTE COUNT OF I&R OTHER THAN FTE'S IN THE FIRST 3 YEARS OF A "NEW TEACHING PROGRAM". (SEE INSTRUCTIONS) | | | |
| 1.14 | CURRENT YEAR'S UNWEIGHTED I&R FTE COUNT FOR RESIDENTS WITHIN THE FIRST 3 YEARS OF A "NEW TEACHING PROGRAM". (SEE INSTRUCTIONS) | | | |
| 1.15 | INTERN AND RESIDENT COUNT FOR IPF PPS MEDICAL EDUCATION ADJUSTMENT (SEE INSTRUCTIONS) | | | |
| 1.16 | AVERAGE DAILY CENSUS (SEE INSTRUCTIONS) | | | |
| 1.17 | MEDICAL EDUCATION ADJUSTMENT FACTOR | | | |
| 1.18 | MEDICAL EDUCATION ADJUSTMENT | | | |
| 1.19 | ADJUSTMENT NET IPF PPS PAYMENTS | | | |
| 1.20 | STOP LOSS PAYMENT FLOOR | | | |
| 1.21 | ADJUSTMENT NET PAYMENT FLOOR | | | |
| 1.22 | STOP LOSS ADJUSTMENT | | | |
| 1.23 | TOTAL IPF PPS PAYMENTS | | | |
| 1.35 | UNWEIGHTED INTERN AND RESIDENT FTE COUNT FOR COST REPORT PERIODS ENDING ON/OR PRIOR TO 11/15/2004 | | | |
| 1.36 | NEW TEACHING PROGRAM ADJUSTMENT (SEE INSTRUCT) | | | |
| 1.37 | CURRENT YEAR'S UNWEIGHTED FTE COUNT OF I&R OTHER THAN FTES IN 1ST 3 YRS OF A "NEW TEACHING PROG" | | | |
| 1.38 | CURRENT YEAR'S UNWEIGHTED I&R FTE COUNT FOR RESIDENTS WITHIN THE 1ST 3 YRS OF "NEW TEACHING PROGRAM". (SEE INST.) | | | |
| 1.39 | INTERN & RESIDENT COUNT FOR IRF PPS MEDICAL EDUCATION ADJUSTMENT (SEE INSTRUCTIONS) | | | |
| 1.40 | AVERAGE DAILY CENSUS (SEE INSTRUCTIONS) | | | |
| 1.41 | MEDICAL EDUCATION ADJUSTMENT FACTOR {((1 + (LN 1.39/LN 1.40)) RAISED TO POWER OF .9012 - 1). | | | |
| 1.42 | MEDICAL EDUCATION ADJUSTMENT (LINE 1.02 MULTIPLIED BY LINE 1.41). | | | |
| 2 | ORGAN ACQUISITION | | | |
| 3 | COST OF TEACHING PHYSICIANS | | | |
| 5 | PRIMARY PAYER PAYMENTS | | | |
| 7 | DEDUCTIBLES | 22,776 | 22,776 | |
| 9 | COINSURANCE | 15,330 | 15,330 | |
| 11 | REIMBURSABLE BAD DEBTS  (EXCLUDE BAD DEBTS FOR PHYSICIAN PROFESSIONAL SERVICES) (SEE INSTRUCTIONS) | | | |
| 11.01 | REIMBURSABLE BAD DEBTS ADJUSTMENT (SEE INSTRUCTIONS) | | | |
| 11.02 | REIMBURSABLE BAD DEBTS FOR DUAL ELIGIBLE BENEFICIARIES (SEE INSTRUCTIONS) | | | |
| 13 | DIRECT GRADUATE MEDICAL EDUCATION PAYMENTS (FROM WORKSHEET E-3, PART IV, LINE 24) | | | |
| 13.01 | OTHER PASS THROUGH COSTS (SEE INSTRUCTIONS) | | | |
| 14 | RECOVERY OF EXCESS DEPRECIATION RESULTING FROM PROVIDER TERMINATION OR A DECREASE IN PROGRAM UTILIZATION | | | |
| 15 | OTHER ADJUSTMENTS (SPECIFY) | | | |
| 15.99 | OTHER ADJUSTMENTS (SPECIFY) | | | |
| 16 | AMOUNTS APPLICABLE TO PRIOR COST REPORTING PERIODS RESULTING FROM DISPOSITION OF DEPRECIABLE ASSETS | | | |
| 17 | TOTAL AMOUNT PAYABLE TO THE PROVIDER | 6,043,411 | 6,187,305 | 143,894 |
| 18 | SEQUESTRATION ADJUSTMENT (SEE INSTRUCTIONS) | | | |
| 19 | INTERIM PAYMENTS | 6,050,064 | 5,880,950 | -169,114 |
| 19.01 | TENTATIVE SETTLEMENT | | 162,461 | 162,461 |
| 20 | BALANCE DUE PROVIDER/PROGRAM | -6,653 | 143,894 | 150,547 |
| 21 | PROTESTED AMOUNTS (NONALLOWABLE COST REPORT ITEMS) IN ACCORDANCE WITH CMS PUB. 15-II, SECTION 115.2. | | | |

Attachment A

Notification of Appeal/Reopening Procedures

There is a time limit of 180 days from the date of Notice of Program Reimbursement (NPR)/Notice of Correction (NOC) to file a request for either a BCBSA or PRRB hearing. The provider's reopening rights expire 3 years after the date of the Notice of Program Reimbursement/Notice of Correction.

APPEALS

To file an acceptable PRRB or Intermediary Hearing, a request for Hearing must:

(1) be in writing (2) specify the intermediary determination that was made by referring to and supplying copies of actual adjustments and amounts to which you take exception, (3) state the reason supporting your position and (4) cite the regulation and manual sections upon which you base your exceptions. In addition you may include any material you wish to have considered in support of your position.

Specific details concerning Intermediary Hearings and Provider Reimbursement Review Board hearings follow:

INTERMEDIARY HEARINGS

If your amount in controversy is at least $1,000.00, but less than $10,000.00, the Blue Cross Blue Shield Association will hear the dispute as an Intermediary Hearing.

Request for BCBSA hearings should be sent to:

Intermediary Hearing Officer
Strategic Government Initiatives
Blue Cross Blue Shield Association
225 N. Michigan Avenue
Chicago, IL 60601-7680

In deciding whether or not to seek a BCBSA appeal hearing, you should know that the authority of BCBSA Hearing Officers is limited to a consideration of facts and the application of the law, regulations and general instructions as written in regard to those facts. The officers cannot entertain arguments directed to the constitutionality, legality, propriety, or wisdom of any of the laws, regulations and general instructions.

You may discuss a disputed matter with us with a view towards resolution. However, once you have filed a BCBSA appeal request, any settlement of the disputed adjustment(s) must be approved by a Blue Cross Blue Shield Association Hearing Officer.

## PROVIDER REIMBURSEMENT REVIEW BOARD HEARINGS

If your amount in controversy is is $10,000.00 or more, the dispute will be heard by the Provider Reimbursement Review Board established pursuant to Section 243 of PL 92-603. Appeal requests to the Provider Reimbursement Review Board should be sent by overnight delivery to:

Steve Kirsh - Director
Jurisdiction and Case Management Staff
Provider Reimbursment Review Board
Mail Stop C1-11-18
7500 Security Boulevard
Baltimore, Maryland 21244

Also, please send a copy of your appeal request to the following addresses:

PRRB Appeals Coordinator
Blue Cross Blue Shield Association        and
225 N. Michigan Avenue
Chicago, IL 60611-7680

Mr. Mike Harty
Program Manager
Blue Cross Blue Shield Association
7004 Security Blvd.
Suite 301
Baltimore, Maryland 21244

Subsequent to the filing of an appeal request with the Board, discussions may still continue between us with a view toward clarifying, defining and narrowing the issues.

Please send a copy of appeal requests to:

Mr. George Porette, Manager
Provider Audit & Reimbursement
National Government Services, Inc.
P.O. Box 4846
Syracuse, New York 13221

Please send a copy of reopening requests to:

Sandra O'Connor, Manager
Provider Audit & Reimbursement
National Government Services, Inc.
P.O. Box 4846
Syracuse, New York 13221

2



**Lutheran**
**Medical Center.**

150 55th Street
Brooklyn, NY  11220

January 16, 2009

CHAIRPERSON

PROVIDER REIMBURSEMENT REVIEW BOARD

2520 Lord Baltimore Drive, Suite L

Baltimore, MD 21244-2670

       Re:    Lutheran Medical Center
              Provider No. 33-0306
              <u>FYE 12/31/2004, PRRB Case No.</u>        

Dear Sir/Madam:

      The Provider designates Roy W. Breitenbach, Esq., Garfunkel, Wild & Travis, P.C., 111 Great Neck Road, Great Neck, New York 11021 (516-393-2200), as its Representative in this Appeal.

                                Very truly yours,

                                  Rick Langfelder
                                Executive Vice President, Finance

3

PROVIDER REIMBURSEMENT REVIEW BOARD
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

LUTHERAN MEDICAL CENTER,                          :
Provider No. 33-0306                              :
                                                  :    **STATEMENT OF THE ISSUES**
                            Provider,             :
                                                  :
       -against-                                  :
                                                  :    FYE 12/31/2004
NATIONAL GOVERNMENT SERVICES,                     :
                                                  :
                      Fiscal Intermediary.        :
                                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

The Provider identifies and states that it has the following issue with regard to the Notice

of Program Reimbursement for the Fiscal Year Ending December 31, 2004:

1.   **Medicaid Eligible Days (Audit Adjustments 7, 9, 11 and 13)** – CMS failed to
     include Medicaid Eligible Days in the Provider's Disproportionate Share
     Adjustment for FYE 12/31/2004. Based on the internal analysis approximately
     1,500 days were excluded from the DSH calculation. Estimated impact:
     $350,000.

2.   **Medicaid Paid Days (Audit Adjustments 7, 9, 11 and 13)** – CMS failed to
     include certain Medicaid-paid days when calculating the Provider's
     Disproportionate Share Adjustment for FYE 12/31/2004 due to a New York State
     Department of Health programming error, which inappropriately eliminated these
     Medicaid-paid days from the original submission. After identifying this error, the
     NYS DOH subsequently supplied a listing of the restored Medicaid-paid days,
     totaling 620. The Provider estimates that restoration of these inappropriately
     excluded days would yield additional reimbursement. Estimated impact:
     $125,000.

3.   **Medicare Part B Days (Audit Adjustments 7, 9, 11 and 13)** – CMS failed to
     include Medicare Part B Days where Medicare Part B is considered as Primary,
     and Medicaid was the secondary payer. Our internal analysis shows that
     approximately 6,500 days were omitted from the DSH calculation. Estimated
     impact: $1,300,000. (This issue will subsequently be transferred to Group
     Appeal).

4.   **FHC (Audit Adjustment 1)** – Audit Adjustment 1 provides that: "The provider
     does not have a certified FQHC unit therefore, the information for the sub-
     provider #331845 has been removed from the worksheet S-3 Line 14.10." The

Provider strongly disagrees with this adjustment, and confirms that it does have a certified hospital-based FQHC unit under sub-provider #331845. The unit has always been in existence on worksheet S-3 Line 140.10 of the Provider's cost reports. Estimated impact: $11,573.

5. **FHC Bad Debt (Audit Adjustment 44)** – Audit Adjustment 44 provides that: "To adjust reimbursable bad debts to actual documentation supplied by the provider." The Provider disagrees with the adjustment made by the Auditors to disallow FHC Medicare Bad debts for $11,573. Estimated impact: $11,573.

PROVIDER REIMBURSEMENT REVIEW BOARD
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| LUTHERAN MEDICAL CENTER,<br>Provider No. 33-0306 | **PROVIDER'S PRELIMINARY**<br>**POSITION PAPER** |
| Provider, | |
| -against- | PRRB Case No. 09-0728<br>FYE 12/31/2004 |
| NATIONAL GOVERNMENT SERVICES, | |
| Fiscal Intermediary. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## PRELIMINARY STATEMENT

By this proceeding, the Provider, Lutheran Medical Center, appeals certain

determinations made by its Medicare Fiscal Intermediary, National Government Services, when

issuing its Notice of Program Reimbursement for the Provider's fiscal year ending December 31,

2004. Specifically, the Provider appeals the Intermediary's determinations regarding its

Disproportionate Share Adjustment.

Because, as explained below, these Intermediary determinations are unsupported by the

facts, the law, and the relevant CMS regulations and program instructions, the determinations

should be overturned by the Board.

## STATEMENT OF THE CASE

### Introduction

The Provider, Lutheran Medical Center, is a 476-bed, not-for-profit, general hospital that

is licensed to provide inpatient hospital services pursuant to Article 28 of the New York Public

Health Law. The Provider has participated in the Medicare program since January 1, 1966, and

1278387v.1

has been subject to the Medicare Prospective Payment System ("PPS") since the fiscal year beginning January 1, 1986 and ending December 31, 1986.

As a large hospital located in the Sunset Park section of Brooklyn in New York City, the Provider serves a large number of poor and elderly patients.

**The Provider's 2004 Institutional Cost Report**

The Provider filed its revised Institutional Cost Report for the fiscal year beginning January 1, 2004 and ending December 31, 2004 ("2004 ICR") on August 21, 2006.

**Intermediary's 2003 Final Settlement**

On July 28, 2008, the Intermediary issued its final settlement and Notice of Program Reimbursement to the Provider for its 2004 fiscal year.  (A copy of the relevant portion of this Final Settlement and Notice of Program Reimbursement ("2004 NPR") has been submitted as Exhibit 1.)

In the 2004 NPR, the Intermediary determined that there was an amount due the Provider of $908,833.  The Intermediary based this calculation on various audit adjustments.  (A copy of the relevant portion of the Audit Adjustment Report has been submitted as Exhibit 2.)

**This Appeal**

By Request for Board Hearing dated January 23, 2009, the Provider appealed the Intermediary's Notice of Program Reimbursement for its fiscal year ending December 31, 2004. (A copy of the Request is annexed as Exhibit 3.)

<u>**ISSUES ON APPEAL**</u>

In its Request for Board Hearing, the Provider identified the following appeal issue

regarding the 2004 NPR:

1. **Medicaid Eligible Days (Audit Adjustments 7, 9, 11 and 13)** – CMS failed to include Medicaid Eligible Days in the Provider's Disproportionate Share Adjustment for FYE 12/31/2004. Based on the internal analysis approximately 1,500 days were excluded from the DSH calculation. Estimated impact: $350,000.

2. **Medicaid Paid Days (Audit Adjustments 7, 9, 11 and 13)** – CMS failed to include certain Medicaid-paid days when calculating the Provider's Disproportionate Share Adjustment for FYE 12/31/2004 due to a New York State Department of Health programming error, which inappropriately eliminated these Medicaid-paid days from the original submission. After identifying this error, the NYS DOH subsequently supplied a listing of the restored Medicaid-paid days, totaling 620. The Provider estimates that restoration of these inappropriately excluded days would yield additional reimbursement. Estimated impact: $125,000.

3. **Medicare Part B Days (Audit Adjustments 7, 9, 11 and 13)** – CMS failed to include Medicare Part B Days where Medicare Part B is considered as Primary, and Medicaid was the secondary payer. Our internal analysis shows that approximately 6,500 days were omitted from the DSH calculation. Estimated impact: $1,300,000. (This issue will subsequently be transferred to Group Appeal).

4. **FHC (Audit Adjustment 1)** – Audit Adjustment 1 provides that: "The provider does not have a certified FQHC unit therefore, the information for the sub-provider #331845 has been removed from the worksheet S-3 Line 14.10." The Provider strongly disagrees with this adjustment, and confirms that it does have a certified hospital-based FQHC unit under sub-provider #331845. The unit has always been in existence on worksheet S-3 Line 140.10 of the Provider's cost reports. Estimated impact: $11,868.

5. **FHC Bad Debt (Audit Adjustment 44)** – Audit Adjustment 44 provides that: "To adjust reimbursable bad debts to actual documentation supplied by the provider." The Provider disagrees with the adjustment made by the Auditors to disallow FHC Medicare Bad debts for $11,573. Estimated impact: $11,868.

On June 30, 2009, the Provider transferred Issue # 3 – Medicare Part B Days (as Medicaid Dual Eligible Days) to a group appeal.  (A copy of the Form D Request for Transfer is annexed as Exhibit 4.)

## PROVIDER'S POSITION ON APPEAL

### Issues #1 and 2 – Medicaid Eligible Days and Medicaid Paid Days

The Provider, located in Brooklyn, New York, is a general short term acute care hospital whose service area contains a population that includes poor and near poor.  During the cost reporting period ended December 31, 2004, the Provider was licensed for a total of 476 acute beds.

When Congress implemented the Prospective Payment System (PPS), which substantially depends upon "standardized amounts" in calculating a hospital's payment amount, it expressed concern that hospitals which incurred a higher cost per discharge simply because they served a disproportionate share of low income patients, and not because they were inefficient or otherwise differed from comparable hospitals, would be severely disadvantaged.  In order to address this problem, it determined that hospitals serving a disproportionate number of low income individuals should obtain additional compensation:

> Hospitals that serve a disproportionate share of low income patients have higher Medicare costs per case.  There are two categories of reasons for these increased costs : a) low income Medicare patients are in poorer health within a given [diagnosis] (that is, they are more severely ill than average), tend to have more complications, secondary diagnoses and fewer alternatives for out of hospitals convalescence than other patients; b) hospitals having a large share of low income patients (Medicare and non-Medicare) have extra overhead costs and higher staffing ratios which reflect the special need for such personnel as medical social workers, translators, nutritional and health education workers.  These hospitals are frequently located in central city areas and have higher security costs.  They often serve as regional centers and have high standby costs for trauma units, burn units, psychiatric emergency services, neonatal intensive care units and poison control

units.  They are often recipients of economic transfers of high cost low income patients from other hospitals.

The conclusion that certain hospitals serving a disproportionate share of low income patients have higher costs per case is supported by data and analysis from the Congressional Budget Office, the Prospective Payment Assessment Commission, the Health Care Financing Administration and the Urban Institute.

H.R. Rep. No. 241 (I), 99th Cong., 2d Session, 16-17 (1985), reprinted in 1986 U.S.C.C.A.N. 579, 594-95.

The disproportionate share adjustment is calculated according to a formula that includes the determination of a hospital's "disproportionate patient percentage."  42 U.S.C. § 1395ww(d)(5)(F)(vi).  This percentage is defined as the sum of:

> (I)  The fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which were made up of patients who (for such days) were entitled to benefits under Part A of this title and were entitled to Supplementary Security Income benefits (excluding any state supplementation) under Title XVI of the Act, and the denominator of which is the number of such hospital's patient days for such period which were made up of patients who (for such days) were entitled to benefits under Part A, of this title, and
>
> (II)  The fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consists of patients who (for such days) were eligible for medical assistance under a state plan approved under Title XIX, but who were not entitled to benefits under Part A of this title, and the denominator of which is the total number of the hospital's patient days for such period."  *Id.*

In the fraction at issue here (see U.S.C. § 1395ww (d)(5)(F)(vi)(II)), the numerator is required to include the total number of hospital patient days during the fiscal year in which patients were eligible for medical assistance under a state plan approved under Title XIX, but were not entitled to hospital benefits under Medicare.  The denominator of this fraction includes the total number of the hospital's patient days for the given fiscal year.  The greater the number of days included in the numerator, the larger the fraction is, which, in turn, results in, all other

things being equal, a larger disproportionate patient percentage.  The larger the disproportionate

patient percentage, the larger the adjustment the hospital will receive in its compensation under

PPS.

To implement the disproportionate share adjustment provision in the statute, the

Secretary issued 42 C.F.R. § 412.106.  In promulgating the final rule, the Secretary stated:

> . . . Medicaid covered days will include only those days for which benefits are
> payable under Title XIX.  Any day of the Medicaid patient's hospital stay that is
> not payable by the Medicaid program will not be counted as a Medicaid patient
> day since the patient is not considered eligible for Medicaid coverage on those
> days.  For example, if a patient is hospitalized for 15 days and is eligible for
> Medicaid benefits for 10 of those days, only the 10 covered days will be
> considered Medicaid patient days for purposes of determining a hospital's
> disproportionate patient percentage.

51 Fed. Reg. 16772, 16777 (May 6, 1986).

Thus, under the Secretary's rule, for the purposes of computing the hospital's

disproportionate share percentage, the dispositive issue in determining whether the patient's

patient day is included is whether the state's Medicaid program paid for that patient day, and not

the person's status of being Medicaid eligible (either categorically or medically needy) under the

state Medicaid plan.

In calculating the Provider's DSH payment, the Intermediary determined the number of

Medicaid days to be used in the calculation under 42 C.F.R. § 412.106(b)(4).  Following what

had been Medicare policy in this area, only those days of care for which the provider actually

received Medicaid payment were included in the count of Medicaid days.  This was

accomplished by the Intermediary's utilization of a Medicaid paid days run that was generated

by New York State.  There are several issues with this approach that leave the Provider with a

deficient DSH calculation. Specifically, these are:

- This run was accumulated by the State Medicaid Agency for a period not exceeding 24 months in duration.

- The Intermediary has not updated its count to reflect post-audit Medicaid determinations by the State Medicaid Agency.

- The Fiscal Intermediary inappropriately denied inclusion of Medicaid Managed Care accounts and their related days when they conducted their audit that resulted in the NPR.

- This appeal, when viewed in the light of HCFAR 97-2, would include all post-audit determinations - both paid days and denied, but eligible days.

- The New York State Department of Health inappropriately eliminated Medicaid paid days from the DSH calculation due to a programming error. After identifying this error, the NYS DOH subsequently supplied a listing of the 1,095 days, which were inappropriately excluded.

Put simply, the inclusion of eligible but not paid Medicaid days, processed during the 24

month period by the State Medicaid Agency, should also be allowed.  This is based on the fact

that the requirement of HCFAR 97-2, that is, "the hospital has a jurisdictionally proper appeal

pending on this issue", has been met.

This eligibility issue has been litigated extensively in the courts, leading to the irrefutable

conclusion that this Medicare policy was unlawful. *See, e.g., Cabell Huntington Hospital v.*

*Shalala*, 101 F.3d 984 (4th Cir. 1996); *ALH Legacy Emanuel Hospital v. Shalala*, 97 F.3d 1261

(9th Cir. 1996); *Jewish Hospital, Inc. v. Secretary of HHS*, 19 F.3d 270 (6th Cir. 1994),

*Monmouth Medical Center v Thompson*, 257 F.3d 807 (D.C. Cir. 2001).

Accordingly, the Provider contends that the Intermediary's DSH calculations were

erroneous because they failed to include in Medicaid days (of the numerator) those days where

inpatient care was provided to Medicaid eligible patients, for which the State Medicaid program has not made a payment for various reasons, and also failed to reflect post-audit determinations. HCFA issued HCFA Ruling 97-2, which is unambiguous on this point. For any appeal pending at the time of issuance of HCFAR 97-2 (or those properly made subsequently), the Intermediary must include all days of care provided to eligible Medicaid recipients regardless of whether the provider received payment for the care. HCFAR 97-2, February 1997. The present appeal, filed in December 2006, was properly made subsequent to HCFAR 97-2 being issued. Therefore, the Board should remand this issue to the Intermediary for redetermination of the Medicaid day count consistent with HCFAR 97-2 and based upon the most recent data available.

The Provider therefore requests the Provider Reimbursement Review Board to affirm its position and remand this issue to the Intermediary for redetermination of the Medicaid day count consistent with HCFAR 97-2 and based upon the most recent data available.

## Issue #3 – Medicare Part B Days

The Provider transferred this issue (as Medicaid Dual Eligible Days) to a group appeal on June 30, 2009. Exh. 4.

## Issue #4 and 5 – FHC/FHC Bad Debt

The Provider operates Federally qualified health clinics ("FQHC") as part of his health care services. These clinics have always been a part of the Provider's practice, and have never existed independently or as part of another entity.

The Intermediary has allowed these clinics for all relevant years prior to 2004. For 2004, however, they inexplicably disallowed the clinics on the premise that the clinics' provider number, #331845, was not in the Intermediary's database. Upon information and belief, the data

was lost when the Intermediary was transferring its database from one office to another. Because the Intermediary did not have a reference to FQHC, it disallowed it in Audit Adjustment 1, and then disallowed FQHC Medicare bad debts in Audit Adjustment 44.

Notably, the Intermediary allowed FQHC again in 2005, further demonstrating that the disallowance in 2004 was a clerical error.

The Provider therefore requests the Provider Reimbursement Review Board to affirm its position and remand this issue to the Intermediary for redetermination of the FQHC disallowance, allowing FQHC, which is an established part of the Provider's health practice, as it has in all other applicable fiscal years.

Dated: Great Neck, New York
        August 28, 2009

GARFUNKEL, WILD & TRAVIS, P.C.
*Attorneys for Provider*

By: _____
          Roy W. Breitenbach

111 Great Neck Road
Great Neck, New York 11021
(516) 393-2200

TO:    PRRB Appeals Coordinator
       Blue Cross Blue Shield Association
       225 North Michigan Avenue
       Chicago, IL 60601-7680

       Mr. George Porette, Manager
       National Government Services
       50 Broadway, Suite 103
       Hawthorne, New York 10532

Ms. Lisa Olgivie, Director
Division of Jurisdiction & Case Management
United States Department of Health and Human Services
Provider Reimbursement Review Board
2520 Lord Baltimore Drive, Suite L
Baltimore, MD 21244-2670

## PRELIMINARY DOCUMENTATION LIST

1.   Final Settlement and Notice of Program Reimbursement, July 28, 2008

2.   Audit Adjustment Report

3.   Request for Board Hearing, January 23, 2009

4.   Form D Request for Transfer, June 30, 2009

From: Crystal.Green@cms.hhs.gov [mailto:Crystal.Green@cms.hhs.gov]
Sent: Wednesday, May 22, 2013 10:16 AM
To: Breitenbach, Roy; NGSCostReportAppeals@wellpoint.com; Kyle.Browning@wellpoint.com;
Arthur.Peabody@bcbsa.com; beatriz.toro@bcbsa.com; Appeals@bcbsa.com
Subject: Notice of Hearing and Critical Due Dates Letter for Lutheran Medical Center Case
No. 09-0728.nohppcall.docx

Please reply to acknowledge receipt

[BLUESEAL] DEPARTMENT OF HEALTH AND HUMAN SERVICES PROVIDER REIMBURSEMENT REVIEW BOARD 2520
Lord Baltimore Drive, Suite L Baltimore, MD  21244-2670
Phone: 410-786-2671      Internet: www.cms.gov/PRRBReview       Fax: 410-786-5298


Provider's e-mail:  rbreitenbach@garfunkelwild.com Intermediary's e-mail:
NGSCostReportAppeals@wellpoint.com; Kyle.Browning@wellpoint.com Intermediary's Rep. e-
mail: Arthur.Peabody@bcbsa.com; beatriz.toro@bcbsa.com BCBS e-mail:  Appeals@bcbsa.com


Garfunkel Wild, P.C.
Roy Breitenbach
111 Great Neck Road
P.O. Box 220802
Great Neck, NY 11021

Blue Cross Blue Shield Association
Arthur E. Peabody, Jr., Esq.
Lead Medicare Counsel
1310 G Street, N.W.
Washington, DC 20005-3004


RE:   Notice of Hearing and Critical Due Dates Letter
        Lutheran Medical Center
        Provider No.:  33-0306

FYE:  12/31/2004
PRRB Case No.:  09-0728

If you have any questions regarding this Notice, please call your Board Advisor, Chris
Zielonis on 410-786-3096.

Paul J. Crofton, Director
Division of Hearings and Decisions

cc:     National Government Services, Inc.
        Kyle Browning
        Appeals Lead
        MP: INA102 - AF42
        P. O. Box 7191
        Indianapolis, IN 46207-7191

        Kevin D. Shanklin
        Executive Director
        Senior Government Initiatives
        BC & BS Association
        225 North Michigan Avenue
        Chicago, IL  60601-7680

* NOTE: Please reference the case number in all communications directly beneath the
mailing address on envelopes and package labels.

Case Number:  09-0728
ENCLOSURE

Re:  Lutheran Medical Center; Provider No. 33-0306; FYE: 12/31/2004

NOTICE OF HEARING

Pursuant to the provider's request for a Provider Reimbursement Review Board ("Board")
hearing under the provisions of section 1878 of the Social Security Act, codified at 42
U.S.C.  § 1395oo, and the authority granted to the Board in the regulations at 42 C.F.R. §
405.1845, a hearing will be held at 9:00 a.m. on  01/10/2014 .  If the provider has not
retained counsel and anticipates doing so, it should do so at this time in order to
provide sufficient opportunity for counsel to prepare this case for hearing.  The Parties
will be contacted shortly by the Board staff member to determine whether a pre-hearing
conference is necessary.  The Board will consider on-the-record hearings, or telephonic
hearings if requested by the parties.

Copies of the Board's Hearing Instructions can be found at:
http://www.cms.gov/Regulations-and-Guidance/Review-Boards/PRRBReview/index.html.  For
additional information on hearing procedures, presentation of evidence to the Board, and
instructions for submitting documents and exhibits for a hearing, click on the Live/Record
Hearing Procedures & Evidence link.

The above hearing date is firm and will be rescheduled only on the Board's own initiative.
Please note that there will be no further notice about this hearing to the parties. The
hearing will be conducted at the Windsor Corporate Park, located at 2520 Lord Baltimore
Drive, Suite L, Baltimore, Maryland, 21244-2670.  Only issues addressed in final position
papers will be decided at the hearing.

        The enclosed Acknowledgment form must be returned immediately upon receipt of this
letter stating that
        you will be present at the above time and place.

FINAL POSITION PAPER DUE DATES:

2

1st of October 2013
The Provider's final position paper is due to the Board and the Intermediary.

1st of November 2013
The Intermediary's final position paper is due to the Board and the Provider.

1st of December 2013
The Provider's (optional) responsive brief is due to the Board and the Intermediary.
NOTE: If you wish to have your case heard on the record, you must make your request in
writing by this due date.

See Rule 27 and following for content requirements and other information regarding the
filing of final position papers.


Case Number:   09-0728

Re:   Lutheran Medical Center; Provider No. 33-0306; FYE: 12/31/2004


IMPORTANT NOTES:  Five (5) additional copies of your position paper must be submitted to
the Board no later than seven to ten (7 - 10) working days prior to the scheduled hearing.
Please call the Board Advisor stated on the notice before submitting your additional
copies of position papers.


ACKNOWLEDGMENT

We hereby acknowledge receipt of hearing notice for the above case and confirm that:

1.      We will be present at 9:00 a.m. on 01/10/2014, in the Board hearing rooms at the
Windsor Corporate Park, located at 2520 Lord Baltimore Drive, Suite L, Baltimore,
Maryland.


2.      We will brief all issues to be heard in the final position paper.


3.      We have read the information under the link entitled Live/Record Hearing
Procedures & Evidence and shall conform to its provisions.


4.      We are aware that five (5) copies of our final position paper are due seven to ten
(7 - 10) working days prior to the scheduled hearing.


_____
Signature


_____
Title


_____
Organization


_____
Date

**DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**PROVIDER REIMBURSEMENT REVIEW BOARD**
2520 Lord Baltimore Drive, Suite L
Baltimore, MD 21244-2670

Phone: 410-786-2671        Internet: www.cms.gov/PRRBReview        Fax: 410-786-5298

<u>**CERTIFIED MAIL**</u>

OCT 28 2013

Refer to: 09-0728

Garfunkel Wild, P.C.
Roy Breitenbach
111 Great Neck Road
P.O. Box 220802
Great Neck, NY 11021

RE:  Lutheran Medical Center
     Provider No. 33-0306
     FYE 12/31/2004

Dear Mr. Breitenbach:

The Provider Reimbursement Review Board (the Board) scheduled the above-captioned case for a hearing on January 10, 2014.  The Board advised the Provider that final position papers must be filed no later than the first of October 2013 or the appeal would be dismissed.  Since final position papers were not filed on a timely basis, the Board dismisses this appeal.

<u>Board Members:</u>                              <u>FOR THE BOARD:</u>
Keith E. Braganza, CPA
John Gary Bowers, CPA
Michael W. Harty
Clayton J. Nix, Esq.
L. Sue Andersen, Esq.                           Board Member

cc:  Blue Cross Blue Shield Association
     Arthur E. Peabody, Jr., Esq.
     Lead Medicare Counsel
     1310 G Street, N.W.
     Washington, DC 20005-3004

     National Government Services
     Kyle Browning, Appeals Lead
     MP: INA102 - AF42
     P. O. Box 6474
     Indianapolis, IN 46206-6474

     Kevin D. Shanklin, Executive Director, BC & BS Association

PROVIDER REIMBURSEMENT REVIEW BOARD
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LUTHERAN MEDICAL CENTER,                        :      **PROVIDER'S POSITION PAPER**
Provider No. 33-0306
                                                :
                    Provider,                   :
                                                :      PRRB Case No. 09-0728
        -against-                               :      FYE 12/31/2004
                                                :
NATIONAL GOVERNMENT SERVICES,                   :
                                                :
                    Fiscal Intermediary.        :
                                                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## PRELIMINARY STATEMENT

By this proceeding, the Provider, Lutheran Medical Center, appeals certain

determinations made by its Medicare Fiscal Intermediary, National Government Services, when

issuing its Notice of Program Reimbursement for the Provider's fiscal year ending December 31,

2004. Specifically, the Provider appeals the Intermediary's determinations regarding its

Disproportionate Share Adjustment.

Because, as explained below, these Intermediary determinations are unsupported by the

facts, the law, and the relevant CMS regulations and program instructions, the determinations

should be overturned by the Board.

## STATEMENT OF THE CASE

### Introduction

The Provider, Lutheran Medical Center, is a 476-bed, not-for-profit, general hospital that

is licensed to provide inpatient hospital services pursuant to Article 28 of the New York Public

Health Law. The Provider has participated in the Medicare program since January 1, 1966, and

has been subject to the Medicare Prospective Payment System ("PPS") since the fiscal year beginning January 1, 1986 and ending December 31, 1986.

As a large hospital located in the Sunset Park section of Brooklyn in New York City, the Provider serves a large number of poor and elderly patients.

## The Provider's 2004 Institutional Cost Report

The Provider filed its revised Institutional Cost Report for the fiscal year beginning January 1, 2004 and ending December 31, 2004 ("2004 ICR") on August 21, 2006.

## Intermediary's 2003 Final Settlement

On July 28, 2008, the Intermediary issued its final settlement and Notice of Program Reimbursement to the Provider for its 2004 fiscal year. (A copy of the relevant portion of this Final Settlement and Notice of Program Reimbursement ("2004 NPR") has been submitted as Exhibit 1.)

In the 2004 NPR, the Intermediary determined that there was an amount due the Provider of $908,833. The Intermediary based this calculation on various audit adjustments. (A copy of the relevant portion of the Audit Adjustment Report has been submitted as Exhibit 2.)

## This Appeal

By Request for Board Hearing dated January 23, 2009, the Provider appealed the Intermediary's Notice of Program Reimbursement for its fiscal year ending December 31, 2004. (A copy of the Request is annexed as Exhibit 3.)

2679126v.1

## ISSUES ON APPEAL

In its Request for Board Hearing, the Provider identified the following appeal issue regarding the 2004 NPR:

1. **Medicaid Eligible Days (Audit Adjustments 7, 9, 11 and 13)** – CMS failed to include Medicaid Eligible Days in the Provider's Disproportionate Share Adjustment for FYE 12/31/2004. Based on the internal analysis approximately 1,500 days were excluded from the DSH calculation. Estimated impact: $350,000.

2. **Medicaid Paid Days (Audit Adjustments 7, 9, 11 and 13)** – CMS failed to include certain Medicaid-paid days when calculating the Provider's Disproportionate Share Adjustment for FYE 12/31/2004 due to a New York State Department of Health programming error, which inappropriately eliminated these Medicaid-paid days from the original submission. After identifying this error, the NYS DOH subsequently supplied a listing of the restored Medicaid-paid days, totaling 620. The Provider estimates that restoration of these inappropriately excluded days would yield additional reimbursement. Estimated impact: $125,000.

3. **Medicare Part B Days (Audit Adjustments 7, 9, 11 and 13)** – CMS failed to include Medicare Part B Days where Medicare Part B is considered as Primary, and Medicaid was the secondary payer. Our internal analysis shows that approximately 6,500 days were omitted from the DSH calculation. Estimated impact: $1,300,000. (This issue will subsequently be transferred to Group Appeal).

4. **FHC (Audit Adjustment 1)** – Audit Adjustment 1 provides that: "The provider does not have a certified FQHC unit therefore, the information for the sub-provider #331845 has been removed from the worksheet S-3 Line 14.10." The Provider strongly disagrees with this adjustment, and confirms that it does have a certified hospital-based FQHC unit under sub-provider #331845. The unit has always been in existence on worksheet S-3 Line 140.10 of the Provider's cost reports. Estimated impact: $11,868.

5. **FHC Bad Debt (Audit Adjustment 44)** – Audit Adjustment 44 provides that: "To adjust reimbursable bad debts to actual documentation supplied by the provider." The Provider disagrees with the adjustment made by the Auditors to disallow FHC Medicare Bad debts for $11,573. Estimated impact: $11,868.

On June 30, 2009, the Provider transferred Issue # 3 – Medicare Part B Days (as Medicaid Dual Eligible Days) to a group appeal.  (A copy of the Form D Request for Transfer is annexed as Exhibit 4.)

## PROVIDER'S POSITION ON APPEAL

### Issues #1 and 2 – Medicaid Eligible Days and Medicaid Paid Days

The Provider, located in Brooklyn, New York, is a general short term acute care hospital whose service area contains a population that includes poor and near poor.  During the cost reporting period ended December 31, 2004, the Provider was licensed for a total of 476 acute beds.

When Congress implemented the Prospective Payment System (PPS), which substantially depends upon "standardized amounts" in calculating a hospital's payment amount, it expressed concern that hospitals which incurred a higher cost per discharge simply because they served a disproportionate share of low income patients, and not because they were inefficient or otherwise differed from comparable hospitals, would be severely disadvantaged.  In order to address this problem, it determined that hospitals serving a disproportionate number of low income individuals should obtain additional compensation:

> Hospitals that serve a disproportionate share of low income patients have higher Medicare costs per case.  There are two categories of reasons for these increased costs : a) low income Medicare patients are in poorer health within a given [diagnosis] (that is, they are more severely ill than average), tend to have more complications, secondary diagnoses and fewer alternatives for out of hospitals convalescence than other patients; b) hospitals having a large share of low income patients (Medicare and non-Medicare) have extra overhead costs and higher staffing ratios which reflect the special need for such personnel as medical social workers, translators, nutritional and health education workers. These hospitals are frequently located in central city areas and have higher security costs.  They often serve as regional centers and have high standby costs for trauma units, burn units, psychiatric emergency services, neonatal intensive care units and poison control

units. They are often recipients of economic transfers of high cost low income patients from other hospitals.

The conclusion that certain hospitals serving a disproportionate share of low income patients have higher costs per case is supported by data and analysis from the Congressional Budget Office, the Prospective Payment Assessment Commission, the Health Care Financing Administration and the Urban Institute.

H.R. Rep. No. 241 (I), 99th Cong., 2d Session, 16-17 (1985), reprinted in 1986 U.S.C.C.A.N. 579, 594-95.

The disproportionate share adjustment is calculated according to a formula that includes the determination of a hospital's "disproportionate patient percentage." 42 U.S.C. § 1395ww(d)(5)(F)(vi). This percentage is defined as the sum of:

> (I)  The fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which were made up of patients who (for such days) were entitled to benefits under Part A of this title and were entitled to Supplementary Security Income benefits (excluding any state supplementation) under Title XVI of the Act, and the denominator of which is the number of such hospital's patient days for such period which were made up of patients who (for such days) were entitled to benefits under Part A, of this title, and

> (II)  The fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consists of patients who (for such days) were eligible for medical assistance under a state plan approved under Title XIX, but who were not entitled to benefits under Part A of this title, and the denominator of which is the total number of the hospital's patient days for such period." *Id.*

In the fraction at issue here (see U.S.C. § 1395ww (d)(5)(F)(vi)(II)), the numerator is required to include the total number of hospital patient days during the fiscal year in which patients were eligible for medical assistance under a state plan approved under Title XIX, but were not entitled to hospital benefits under Medicare. The denominator of this fraction includes the total number of the hospital's patient days for the given fiscal year. The greater the number of days included in the numerator, the larger the fraction is, which, in turn, results in, all other

things being equal, a larger disproportionate patient percentage.  The larger the disproportionate

patient percentage, the larger the adjustment the hospital will receive in its compensation under

PPS.

> To implement the disproportionate share adjustment provision in the statute, the
>
> Secretary issued 42 C.F.R. § 412.106.  In promulgating the final rule, the Secretary stated:

> . . . Medicaid covered days will include only those days for which benefits are
> payable under Title XIX.  Any day of the Medicaid patient's hospital stay that is
> not payable by the Medicaid program will not be counted as a Medicaid patient
> day since the patient is not considered eligible for Medicaid coverage on those
> days.  For example, if a patient is hospitalized for 15 days and is eligible for
> Medicaid benefits for 10 of those days, only the 10 covered days will be
> considered Medicaid patient days for purposes of determining a hospital's
> disproportionate patient percentage.

51 Fed. Reg. 16772, 16777 (May 6, 1986).

> Thus, under the Secretary's rule, for the purposes of computing the hospital's

disproportionate share percentage, the dispositive issue in determining whether the patient's

patient day is included is whether the state's Medicaid program paid for that patient day, and not

the person's status of being Medicaid eligible (either categorically or medically needy) under the

state Medicaid plan.

> In calculating the Provider's DSH payment, the Intermediary determined the number of

Medicaid days to be used in the calculation under 42 C.F.R. § 412.106(b)(4).  Following what

had been Medicare policy in this area, only those days of care for which the provider actually

received Medicaid payment were included in the count of Medicaid days.  This was

accomplished by the Intermediary's utilization of a Medicaid paid days run that was generated

by New York State.  There are several issues with this approach that leave the Provider with a

deficient DSH calculation. Specifically, these are:

- This run was accumulated by the State Medicaid Agency for a period not exceeding 24 months in duration.

- The Intermediary has not updated its count to reflect post-audit Medicaid determinations by the State Medicaid Agency.

- The Fiscal Intermediary inappropriately denied inclusion of Medicaid Managed Care accounts and their related days when they conducted their audit that resulted in the NPR.

- This appeal, when viewed in the light of HCFAR 97-2, would include all post-audit determinations - both paid days and denied, but eligible days.

- The New York State Department of Health inappropriately eliminated Medicaid paid days from the DSH calculation due to a programming error. After identifying this error, the NYS DOH subsequently supplied a listing of the 1,095 days, which were inappropriately excluded.

Put simply, the inclusion of eligible but not paid Medicaid days, processed during the 24

month period by the State Medicaid Agency, should also be allowed.  This is based on the fact

that the requirement of HCFAR 97-2, that is, "the hospital has a jurisdictionally proper appeal

pending on this issue", has been met.

This eligibility issue has been litigated extensively in the courts, leading to the irrefutable

conclusion that this Medicare policy was unlawful. *See, e.g., Cabell Huntington Hospital v.*

*Shalala*, 101 F.3d 984 (4th Cir. 1996); *ALH Legacy Emanuel Hospital v. Shalala*, 97 F.3d 1261

(9th Cir. 1996); *Jewish Hospital, Inc. v. Secretary of HHS*, 19 F.3d 270 (6th Cir. 1994),

*Monmouth Medical Center v Thompson*, 257 F.3d 807 (D.C. Cir. 2001).

Accordingly, the Provider contends that the Intermediary's DSH calculations were

erroneous because they failed to include in Medicaid days (of the numerator) those days where

inpatient care was provided to Medicaid eligible patients, for which the State Medicaid program has not made a payment for various reasons, and also failed to reflect post-audit determinations. HCFA issued HCFA Ruling 97-2, which is unambiguous on this point. For any appeal pending at the time of issuance of HCFAR 97-2 (or those properly made subsequently), the Intermediary must include all days of care provided to eligible Medicaid recipients regardless of whether the provider received payment for the care. HCFAR 97-2, February 1997. The present appeal, filed in December 2006, was properly made subsequent to HCFAR 97-2 being issued. Therefore, the Board should remand this issue to the Intermediary for redetermination of the Medicaid day count consistent with HCFAR 97-2 and based upon the most recent data available.

The Provider therefore requests the Provider Reimbursement Review Board to affirm its position and remand this issue to the Intermediary for redetermination of the Medicaid day count consistent with HCFAR 97-2 and based upon the most recent data available.

## Issue #3 – Medicare Part B Days

The Provider transferred this issue (as Medicaid Dual Eligible Days) to a group appeal on June 30, 2009. Exh. 4.

## Issue #4 and 5 – FHC/FHC Bad Debt

The Provider operates Federally qualified health clinics ("FQHC") as part of his health care services. These clinics have always been a part of the Provider's practice, and have never existed independently or as part of another entity.

The Intermediary has allowed these clinics for all relevant years prior to 2004. For 2004, however, they inexplicably disallowed the clinics on the premise that the clinics' provider number, #331845, was not in the Intermediary's database. Upon information and belief, the data

was lost when the Intermediary was transferring its database from one office to another. Because the Intermediary did not have a reference to FQHC, it disallowed it in Audit Adjustment 1, and then disallowed FQHC Medicare bad debts in Audit Adjustment 44.

Notably, the Intermediary allowed FQHC again in 2005, further demonstrating that the disallowance in 2004 was a clerical error.

The Provider therefore requests the Provider Reimbursement Review Board to affirm its position and remand this issue to the Intermediary for redetermination of the FQHC disallowance, allowing FQHC, which is an established part of the Provider's health practice, as it has in all other applicable fiscal years.

Dated: Great Neck, New York
      October 31, 2013

GARFUNKEL, WILD & TRAVIS, P.C.
*Attorneys for Provider*

By: _____
             Roy W. Breitenbach

111 Great Neck Road
Great Neck, New York 11021
(516) 393-2200

TO:    PRRB Appeals Coordinator
       Blue Cross Blue Shield Association
       225 North Michigan Avenue
       Chicago, IL 60601-7680

       National Government Services, Inc.
       Kyle Browning
       Appeals Lead
       MP: INA102 - AF42
       P. O. Box 7191
       Indianapolis, IN 46207-7191

2679126v.1

Kevin D. Shanklin
Executive Director
Senior Government Initiatives
BC & BS Association
225 North Michigan Avenue
Chicago, IL  60601-7680

Ms. Lisa Ogilvie
Director of Jurisdiction & Case Management
United States Department of Health and Human Services
Provider Reimbursement Review Board
2520 Lord Baltimore Drive, Suite L
Baltimore, MD 21244-2670

## DOCUMENTATION LIST

1.   Final Settlement and Notice of Program Reimbursement, July 28, 2008

2.   Audit Adjustment Report

3.   Request for Board Hearing, January 23, 2009

4.   Form D Request for Transfer, June 30, 2009

# GARFUNKEL WILD, P.C.
### ATTORNEYS AT LAW

111 GREAT NECK ROAD • GREAT NECK, NEW YORK 11021
TEL. (516) 393-2200 • FAX (516) 466-5964
www.garfunkelwild.com

ROY W. BREITENBACH
Partner/Director
Email:
rbreitenbach@garfunkelwild.com
Direct Dial: (516) 393-2272

FILE NO.:   07174.0073

November 4, 2013

**By FedEx**

Ms. Lisa Ogilvie, Director
Division of Jurisdiction and Case Management
Department of Health and Human Services
Provider Reimbursement Review Board
2520 Lord Baltimore Drive - Suite L
Baltimore, MD 21244-2670

> Re:   **Provider Name:  Lutheran Medical Center**
> **Provider Number: 33-0306**
> **Intermediary: National Government Services**
> **Fiscal Years Ended: December 31, 2003 and December 31, 2004**
> **PRRB Case Numbers: 08-2631 and 09-0728**

Dear Ms. Ogilvie:

This firm represents Provider Lutheran Medical Center in the referenced appeals. We are in receipt of the Board's notice dated October 28, 2013, dismissing the appeals in their entirety. We write to respectfully request that these appeals be reinstated.

Over the past few months, the Provider and the Fiscal Intermediary have been actively working towards resolution of these appeals, along with three other appeals, for FYs 2000, 2001, and 2002, all of which are currently scheduled for a hearing on January 10, 2014. On behalf of the Provider, we have also been responding to jurisdictional challenges filed by the Intermediary in the appeals pertaining to FYs 2001 and 2002. With our focus directed towards issue resolution, we inadvertently missed the deadline for the Final Position Papers for FYs 2003 and 2004. We immediately submitted these papers to the Board upon receipt of the October 28, 2013 notice. You should have received these papers last week.

In light of this inadvertent administrative oversight, we respectfully request that the Board reinstate these appeals. The Preliminary Position Paper for the FY 2003 appeal was submitted to the Fiscal Intermediary on March 21, 2009, and the Preliminary Position Paper for the FY 2004 appeal was submitted to the Intermediary on August 28, 2009. The Final Position Papers contain no new evidence that has not already been submitted in these Preliminary

NEW YORK                    NEW JERSEY                    CONNECTICUT

Ms. Lisa Ogilvie
November 4, 2013
Page 2

Position Papers -- accordingly, the Intermediary has not been prejudiced in any way by the short delay in receiving the Final Position Papers.  Therefore, we respectfully request that the Provider not be precluded from pursuing these appeals.

If you would like to discuss this matter any further, we can be available for a teleconference at the Board's convenience.  Thank you for your consideration of this matter.

Very truly yours,

Roy W. Breitenbach

GARFUNKEL WILD, P.C.

2684179v.1

Ms. Lisa Ogilvie
November 4, 2013
Page 3


cc:    PRRB Appeals Coordinator
Blue Cross Blue Shield Association
225 North Michigan Avenue
Chicago, IL 60601-7680

National Government Services, Inc.
Kyle Browning
Appeals Lead
MP: INA102 - AF42
P. O. Box 7191
Indianapolis, IN 46207-7191

Kevin D. Shanklin
Executive Director
Senior Government Initiatives
BC & BS Association
225 North Michigan Avenue
Chicago, IL 60601-7680

GARFUNKEL WILD, P.C.



# DEPARTMENT OF HEALTH AND HUMAN SERVICES
## PROVIDER REIMBURSEMENT REVIEW BOARD
2520 Lord Baltimore Drive, Suite L
Baltimore MD 21244-2670

Phone: 410-786-2671
FAX: 410-786-5298

Internet: www.cms.gov/PRRBReview

Refer to:

### CERTIFIED MAIL

DEC 06 2013

Garfunkel Wild, P.C.
Roy Breitenbach
111 Great Neck Road
P.O. Box 220802
Great Neck, NY 11021

Re:  **Response to November 4, 2013, Reinstatement Request for**
Lutheran Medical Center
Provider No. 33-0306
FYE: 12/31/2004
PRRB Case No. 09-0728

Dear Mr. Breitenbach:

The Provider Reimbursement Review Board (Board) has reviewed the reinstatement request for the above-captioned appeal, which was dismissed October 28, 2013, for not filing a final position paper by the October 1, 2013 deadline.

On November 5, the Provider Representative submitted a copy of the final position paper with a request to reinstate the above-captioned appeal. In the reinstatement request you indicate you had been actively pursuing resolution of FYE 2000, 2001 and 2002 appeals and that you had also recently responded to jurisdictional challenges filed by the Intermediary in appeals pertaining to FY 2001 and 2002 causing you to inadvertently miss your deadline in this case.

After reviewing the facts of the case, the Board finds that this appeal was properly dismissed for failure to timely file its final position paper. Section 42 C.F.R 405.1868(a) provides the Board full power and authority to make rules and establish procedures necessary to carry out the provisions of sections 1878 of the Act. The Board's powers include the authority to take appropriate actions in response to the failure of a party to a Board appeal to comply with Board rules. 42 C.F.R 405.1868(b) specifically provides that the Board has the authority to dismissed an appeal with prejudice if a provider fails to meet a filing deadline or other requirement established by the Board.

The May 22, 2013 Notice of Hearing and Critical Due Dates Letter notified the Provider of its final position paper deadline and referenced Board Rule 27 which notifies the Provider that failure to file its position paper may result in dismissal of its appeal. It also notifies the provider that no further notice will be provided. In addition, the acknowledgement letter the Board issued in response to the Provider's appeal request included a dismissal warning that read:

Page 2
PRRB Case No. 09-0728

> You are responsible for pursuing your appeal in accordance with the
> Board's Rules. You must meet the above due dates regardless of any
> outstanding jurisdictional challenges, motions, discovery requests, or
> subpoena requests.  If you miss any of your due dates, the Board will
> dismiss your appeal. The Board will not send a due date reminder.

When the Provider failed to submit the final position paper by the deadline, the Board dismissed
the case as it instructed it would do if a deadline was missed. It is noted that the Board did not
dismiss until October 28, 2013, approximately one month after the due date, allowing ample
additional time for the Provider to furnish the required filing. The Board's authority to dismiss
cases for failure to file a position paper has been consistently upheld by the courts, most recently
in *Kaiser Foundation Hospitals .v Sebelius*, 649 F3d 1153(9th Cir. 2011).

Based on these factors, the Board denies the Providers request for reinstatement.  The case
remains in a closed status.

Board Members Participating:                    FOR THE BOARD
Michael W. Harty
John Gary Bowers, CPA
Clayton J. Nix, Esq.
L. Sue Andersen, Esq.                           Michael W. Harty
                                                Chairman


National Government Services
Kyle Browning, Appeals Lead
MP: INA102 - AF42
P. O. Box 6474
Indianapolis, IN 46206 – 6474


Blue Cross & Blue Shield Association